# GRAFFLIN COOK *vs.* MARTIN GILLET GILL.

*Action of Deceit—Sufficiency of Evidence to Entitle Plaintiff to Recover—Reliance Upon False Representations—Instructions to the Jury—Variance Between Allegata and Probata.*

In an action of deceit plaintiff's evidence was that defendant induced him to buy fifty shares of stock in a corporation, of which defendant was an officer, at $75 per share, by representations that the stock was valuable and worth $80 per share; that defendant would not sell any of his own shares, but could procure some for plaintiff from a person who wanted to sell in order to pay off a mortgage debt. The fact was that defendant already owned twenty-five of the fifty shares to be sold to plaintiff for which he had paid $30 per share, and bought the other twenty-five for less than $50 per share. Plaintiff looked at a patented machine owned by the corporation whose shares he was buying, but there was evidence that he did not rely upon his examination but upon the representations of the defendant, and that he was induced to pay much more for the stock than it was worth. *Held*, that there was sufficient evidence to go to the jury that the plaintiff mainly and substantially relied upon the false representations made by the defendant and was injured thereby.

Where the defendant denied that he made the representations which the plaintiff alleged in the declaration that he made, a prayer instructing the jury that if the defendant did not make *those* representations, the plaintiff is not entitled to recover, although he understood the defendant to make the same, is properly rejected, because in an action of deceit it is not necessary to prove the exact language of the representation as set out in the declaration, but proof of it in substance is sufficient, and because by another prayer the jury were instructed that to entitle the plaintiff to recover they must find from the evidence that the defendant made to the plaintiff the representations substantially as set out in the declaration.

Where the declaration alleged that the plaintiff relied *altogether and exclusively* upon the false representations of the defendant, it is sufficient if the proof be that the plaintiff relied *mainly* and *substantially* on the same.

Appeal from the Baltimore City Court, where the case was tried before the Court (Dobler, J.) without a jury. The plaintiff's prayer, which was granted, was as follows:

" That if the Court shall believe, from the evidence in this case, that the defendant did falsely represent to the plaintiff, with knowledge at the time of the falsity of such representation, that he and certain other parties were shareholders in the Campbell Barrel Company, and that its stock was worth eighty dollars a share, which was very low for it, and that it was a good investment, better than the Crown Cork and Seal Company ; that he could buy for the plaintiff some of the Campbell Barrel stock from one of the parties interested with him in the said shares of the company ; that the said party was obliged to sell it to relieve a mortgage on his house, and that the price every one paid for the stock was eighty dollars a share ; and that he himself held a large number of shares, but would not sell it at any price, with intent to induce him, the plaintiff, to purchase some of the shares so for sale in the hands of one of the stockholders ; and that the plaintiff believing such representations to be true was actually induced by such false representations to purchase from the said party so selling the said stock, as represented by said defendant, fifty shares of the said stock at the price of seventy-five dollars per share, which was the price that the defendant alleged that he had paid for the stock to the party selling the same, if the Court shall so find, and the plaintiff did pay therefor to the defendant the sum of thirty-seven hundred and fifty dollars, then the plaintiff is entitled to recover, in this action, such amount as may be found to have been lost by the plaintiff by the direct consequence of such false representation. "

The defendant asked the Court to adopt the following propositions of law and to apply the same to the testimony in the case in making up its verdict :

1st. The plaintiff has offered no evidence legally sufficient to entitle him to recover under the pleadings in this case and the verdict should be for the defendant. (*Rejected*).

2nd. That the plaintiff, having produced no evidence

legally sufficient to sustain the material averments of the declaration, the verdict should be for the defendant. (*Rejected*).

3rd. That the burden of establishing the material averments of the declaration by a preponderance of testimony satisfactory to the Court sitting as a jury is upon the plaintiff, and that if the testimony in this case should be such as leave the mind of the Court, sitting as a jury, in a state of equipose as to the said material allegations, the verdict must be for the defendant. (*Granted*).

4th. That if the Court finds from the evidence that the defendant made certain representations different from those charged in the declaration in the interviews with the plaintiff, and did not make those charged in the declaration, the plaintiff is not entitled to recover, although the Court, sitting as a jury, should find that the plaintiff understood him to make the representations. (*Rejected*).

5th. If the Court, sitting as a jury, shall find from the evidence that the plaintiff appeared before the grand jury and preferred a charge against the defendant relative to the purchase of the fifty shares of stock of the Campbell Barrel Company by the plaintiff from the defendant, and that in support of such charge the plaintiff gave his evidence before said grand jury (which was) at variance or inconsistent with his testimony as given upon the stand in this case, then the plaintiff is not entitled to recover in this case, and the verdict should be for the defendant.

(Rejected as offered, and granted as modified by striking out the words " which was," in brackets.)

6th. If the Court shall find from the evidence that about one year prior to the bringing of this suit, the plaintiff ascertained from the witness, Hoopes, that the fifty shares of the Campbell Barrel Company stock, purchased by the plaintiff from the defendant, had been sold by the said Hoopes to the defendant at a lower rate per share than the plaintiff paid the defendant for the same, and that after such information and discovery the plaintiff made no complaint

to, or claim against, the defendant by reason of such discovery, and continued to co-operate with the said defendant in reference to the property of said company after such discovery as before, then it is competent for the Court, sitting as a jury, to consider such conduct of the plaintiff in connection with the interviews between the plaintiff and defendant leading up to the purchase of said stock from the defendant by the plaintiff, with a view to determine what representations were in fact made by the defendant at such interviews. (*Granted*).

7th. That even if the Court, sitting as a jury, find that representations laid in the declaration or any of them, were made by the defendant, and that such representations were untrue in fact, yet the verdict should be for the defendant, unless the Court further finds that the defendant fraudulently intended to deceive the plaintiff, and that the Court in making up its mind should consider that fraud is odious in contemplation of law, and not to be presumed, and the burthen of proof is on the plaintiff to overcome such legal presumption by evidence satisfactory to the Court sitting as a jury. (*Granted*).

8th. If the Court, sitting as a jury, shall find from the evidence that the plaintiff, in making the purchase from the defendant of the fifty shares of stock of the Campbell Barrel Company, did not rely and confide mainly and substantially (altogether and exclusively) upon the faith and truth of the statements of the defendant made with reference thereto, the verdict should be for the defendant.

(Rejected, and granted as modified, by striking out words altogether and exclusively, and substituting the words " *mainly* and *substantially*.")

9th. That in order to entitle the plaintiff to recover in this case, it is necessary for the Court, sitting as a jury, to believe upon the evidence :

1st. That the defendant made to the plaintiff the representations (*substantially*) as set forth in the declaration.

2nd. That said statements or any of them were untrue in fact.

3rd. That the defendant, at the time of making the representations, knew them or any of them to be untrue, or made them or either of them with a reckless disregard of their truth or untruth.

4th. That the defendant, at the time of making the representations, intended to deceive the plaintiff.

5th. And that the plaintiff materially relied on those representations to his prejudice and damage.

(*Granted* with modification of the word " *substantially.*")

10th. That if the Court, sitting as a jury, should find for the plaintiff in this case, the measure of damages is the difference between the price paid for said stock and the value of the same at the time it was purchased, and that there can be no recovery in respect of the twenty-five shares of said stock disposed of by the plaintiff to the witness, Morton, plaintiff, in open Court, having disclaimed any damage in respect thereto.  (*Granted*).

11th. That in no event can the plaintiff recover anything but the difference between the price paid by him to the defendant for the twenty-five shares of stock now held by him of his original purchase of fifty shares, and the price paid by the defendant to the witness, Hoopes, for the said twenty-five shares.  (*Granted*).

12th. That should the plaintiff be entitled to recover, the true measure of damages is the difference between the contract price of the stock in question and the value of the said stock *when* purchased by the plaintiff from the defendant, and as there is no evidence in this case that at the time of said purchase the value of said stock was less than the contract price of the same, the verdict should be for the defendant.  (*Rejected*).

A verdict for the plaintiff for $1,293.75 was rendered and from the judgment thereon the defendant appealed.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

**182**        COOK *vs.* GILL.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the ·brief), for the appellant.

The special exception to the appellee's prayer and the appellant's eighth prayer as offered, required it to be found that the appellee " *relied and confided altogether and exclusively* " upon the alleged false representation before he could recover. The eighth prayer was obviously correct. The appellant averred in his *nar.* as follows : " Relying and confiding altogether and exclusively upon the faith and truth of these statements, and *not upon any other cause or* inducement whatever," he made the purchase. After appellee gave his evidence to the effect that he had examined the machine and its workings, and knew the value of the stock depended · upon the value of the machine and its capacity to make water barrels, and that he came to his own conclusions about the value of the machine after his personal inspection of it, and admitted that the machine was all right, we submit that he should have amended his *nar.*, but not having done so, he is concluded by its averments. The *allegata* must be verified by the *probata.*

It will hardly be contended· by appellee that he purchased the stock *solely* upon the alleged representation that appellant was procuring the stock of a man who wanted to satisfy a mortgage upon his house. Strike that from the case, and the transaction would still have been consummated. We still have as facts· that the only sales were at $80 per share ;. that appellant would not and did sell his stock at $75, and the further *vital and important* fact that appellee formed his own conclusion as to the value of the stock, by a ·personal investigation of the merits of the machine, and approved of the stock as an investment.

As evidence of the utmost· good faith upon the part of the appellant, it is in the record that he still holds his own stock and would not part with it at $75 per share. He was under no obligation to take up the Hoopes option at $50 per share ; yet, rather than sell his own stock at $75 and make $1,875 on twenty-five shares, he availed himself of

the option on the twenty-five shares of Hoopes' stock and made but $625, or $25 per share. Many of the alleged false representations set out in plaintiff's prayer *were actual facts*, and it was error to grant it against the special exceptions.

There can be no question that appellee's *understanding* of the representations made to him by the appellant was different from what actually took place, accordingly the fourth prayer should have been granted. A similar prayer (the fifteenth) was granted in *McAleer* v. *Horsey*, 35 Md. 447, 461. In *Weaver* v. *Shriver*, 79 Md. 533, 546, it (the fourth) was held to have been properly rejected, because there was no evidence legally sufficient to sustain it.

By the fifth prayer it was intended to submit the proposition that the appellee was estopped from recovering in this action because *he did in fact* give evidence before the grand jury at variance or inconsistent with his testimony in the record. As modified it was submitted to the Court to determine whether or not there was such variance; which ruling was erroneous, as there was no conflict in the evidence. It was his own admission. *Edes* v. *Garey & Lanahan*, 46 Md. 4; *Scanlon* v. *Walsh*, 81 Md. 118; *Fisher* v. *Boyce*, 81 Md. 46.

The rejection of the twelfth prayer was clearly erroneous. After defining the true measure of damages to be " the difference between the contract price of the stock in question and the value of the stock *when* purchased by the appellee from the appellant," it submitted that there could be no recovery, "as there is no evidence in the case that at the time of said purchase the value of said stock was less than the contract price."

The *concession* of the appellee set out in the 10th prayer, which was granted, precluded any recovery as to the remaining twenty-five shares. Having sold twenty-five shares to Morton, and the proof being clear that he got the full market value for the same, which was exactly the contract price, he was forced to disclaim in open Court any damage

in respect thereto.    Having sold one-half of his stock four months after he purchased it, for the same as he gave for it, how can he claim that the value of the stock at the time he purchased it was less than the contract price?    If the stock was not worth what he paid for it, how could it have "gone down," as he testified before the grand jury?    Gone down from what price?    The contract price, of course.

The grand jury took in the situation at a glance.    He bought the stock at $75, the fair market value of the same. He sold twenty-five shares of it at the same price.    Afterwards the stock depreciated in value, the appellee having discovered that he had paid appellant more than he had given Hoopes for it, he seized upon that as a pretext to prefer a criminal charge against him, probably with a view to force a settlement.    He was perfectly satisfied with the stock till then ; he had sold twenty-five shares to Morton, and came out even on it.    He offered it to Morton at that price, giving as a reason that he would like to sell some, as he had more than he wanted, and wanted some Crown Cork and Seal stock, and said he thought well of it.    There is absolutely nothing to show that he could not have sold all to Morton at the same price, had he not desired to retain it. But it was different when the stock depreciated in value. Then, as he told the grand jury, the stock had " *gone down.*" He wanted to get out of it by saddling it upon appellant at $75 per share, not only what he had left, but another twenty-five shares which he had bought from Rosenthal at $17.

There is no sufficient evidence of false representations, and if any such representations were made it does not appear that he relied " *altogether and exclusively* " upon them ; and, moreover, if he was wrongfully induced by the appellant to enter into the contract, which we respectfully, but strenuously insist, he was not, there can be no recovery, because his own admissions and sales show the stock was worth at the time he bought, exactly what he paid for it.    We therefore ask for a reversal of the judgment.

*Wm. Pinkney Whyte*, for the appellee.

It will be contended on the part of the appellee, that the ruling of the Court on the first exception was entirely correct. 1. The evidence shows that the appellant made the representation set out in the *narr.*, that he could buy for the plaintiff below the shares of the Campbell Barrel Company, as described, from a party who wished and was compelled to sell them to relieve a mortgage on his dwelling, and that he would have to pay for them eighty dollars per share, which was low for them, and that it was the price every one paid for it, and was a good investment. That by these representations the appellee was induced to buy the said shares of stock at $75 a share ; that is, fifty shares for $3,750. That the defendant so represented he had bought the stock for the plaintiff from a seller whose necessities compelled him to sell at a low rate, and that the stock " was a dead sure thing." This was the representation. 2. The statements were untrue in fact. The stock was not bought at $75 a share, and was not at the time of sale being parted with by a man whose necessities compelled its sale at a low price, but it was Cook's own stock ; part of it bought at $30 a share, part at $50 a share and part at $40 a share. 3. The defendant well knew the statements made by him to the plaintiff were false when he made them, or made them with a reckless disregard of their truth or untruth. 4. That the defendant, at the time of making them, intended to deceive the plaintiff. Every one of these requirements, under the Maryland decisions, were fully met by the plaintiff's testimony, and there would have been nothing to justify the Court below in saying that the plaintiff had offered no evidence legally sufficient to sustain the material averments o the declaration. So that the rejection of that prayer was absolutely correct.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant to recover damages for alleged false, fraudulent and deceitful representations made by the latter to him which induced him to purchase fifty

shares of stock of the Campbell Barrel Company at $75 per share, whereby he was cheated and defrauded. The case was tried before the Court without a jury and judgment was rendered in favor of the plaintiff. At the close of the plaintiff's testimony the defendant offered a prayer that, " the plaintiff having offered no evidence legally sufficient to sustain the material averments of the declaration, the verdict should be for the defendant." It was rejected, and the defendant proceeded with his evidence. At the conclusion of the testimony the plaintiff offered one prayer which was granted, and the defendant twelve, the first, second, fourth, fifth, eighth, ninth and twelfth of which were rejected as offered, but the fifth, eighth and ninth were granted with some modifications.

The only questions before us are presented by two bills of exception which contain the rulings of the Court on those prayers. The first asked the Court to say that " the plaintiff has offered no evidence legally sufficient to entitle him to recover under the pleadings in this case and the verdict should be for the defendant." The second was similar to the one previously offered, and we will consider the three together. The appellant contends they should have been granted because the plaintiff's proof failed to establish either the alleged false representations or that he had relied altogether and exclusively on them, or that the stock was at the time of the purchase worth less than he had paid for it.

The plaintiff testified that in February, 1893, desiring to purchase some stock in the Crown Cork and Seal Company, he called on a Mr. Morton for that purpose, who directed him to the defendant. He inquired of the latter if he knew of any of that stock for sale. He said he did not, and asked him why he did not buy some of the Barrel Company stock, to which the plaintiff replied he did not want that. Afterwards Mr. Cook called on him, urged him to buy some of the Barrel Company stock, and said, " I will try to buy it for you as low as I can." He called

on him several times at his place of business trying to in-
duce him to buy that stock, and afterwards called at his
house, and, to use the language of the witness, " insisted on
me buying some of this Barrel Machine Company's stock ;
that it wàs a dead sure thing, and that he would let me in
on the ground floor ; that there was a gentleman who had
some of that stock who had a mortgage on his house and
he could buy it from him for $80 a share. I told him I
didn't want it. The third time he came to the house I
said, ' I will give you $70 for that if it is so good.' " He
also testified that Mr. Cook said eighty dollars was the
price everybody paid for it, and he would see if he could
buy it for seventy dollars, but that he did not think he
could ; that Mr. Cook told him he would not sell his stock
at any price. Afterwards the defendant said he could not
buy it at seventy dollars and that he, plaintiff, had better
take it at eighty dollars. Finally he told him "all right,
tell him I will give him $75 for it." He said, " I will go
and see him." The next evening Cook said, " I have that
stock for you, 50 shares, for $3,750.00." He further tes-
tified that he gave Cook his check for the amount upon the
statement made by him that the man required that sum for
his stock, that he never heard of the stock until Cook
spoke of it, that he had great confidence in Cook, and he
had no knowledge of the value of the stock himself except
what he got from Cook, who was secretary of the Barrel
Company, and induced him to pay seventy-five dollars a
share for it. He admitted that he had, at Cook's request,
looked at the machine, and after his inspection of it said,
" I told him that if what Mr. Cook told me was true, it
might be a good investment—I did not know—provided I
was on the ground floor." ' His evidence tended to show
that he bought the stock and paid seventy-five dollars a
share for it because the defendant, in whom he trusted,
represented it as worth eighty dollars, and that he could
procure it by reason of the fact that the owner had a mort-
gage on his house and needed the money to pay it off,

while the fact was the defendant already owned and held twenty-five of the fifty shares of stock sold the plaintiff, for which he had paid Mr. Hoopes thirty dollars per share, and had an option on twenty-five more shares at fifty dollars per share, which he got, and delivered the fifty shares to the plaintiff. Just what he paid for the twenty-five shares on which he had the option is not clearly shown. Mr. Cook said he got " a slight reduction " from the price named in the option, but did not remember just what he did pay for it, although Mr. Hoopes testified it was fifty dollars per share. The defendant did not procure the stock from a third person to enable the latter to take up a mortgage on his house, but it belonged to the defendant himself and he made a profit of forty-five dollars per share on twenty-five shares and twenty-five dollars or more per share on the balance. It is true that some shares had been sold as high as eighty dollars, but that was not the price everybody paid for it, as the defendant knew from his dealings with Hoopes, and in point of fact he held one hundred and sixty shares which he had received in " promoting the company." Mr. Campbell testified that the defendant, in February, 1893, came into the office of the company and said, " That is the way to do, or something to that effect. He said, I have just made a couple of thousand dollars and I will call the day off and go home.   *   *   *   I said, what was it, and he said he had got stock from Mr. Hoopes for thirty dollars and sold it for seventy or seventy-five dollars, and thought that was doing pretty well, and thought he would shut up and go home.   I said, ' Who did you sell it to,' and he said, Mr. Gill, and that Mr. Hoopes had some other stock that he would probably get hold of yet." The testimony of the plaintiff, which we must assume to be true in considering these prayers, is thus to the effect that the defendant did knowingly make false representations to the plaintiff, with the intent to induce him to buy the stock, and did thereby make the sale which would not have been consummated but for the false representations.

As to whether or not the stock was at the time of sale worth less than he paid for it, the plaintiff testified in answer to the question " Did you try to dispose of the stock?" " Of course, I was trying to sell it all the time, but I couldn't sell it at any price. A few months after that I would have been glad to have taken twenty-five dollars a share for it." Sometime afterwards Mr. Rosenthal sold his stock to the plaintiff, the defendant and others at seventeen dollars per share. But at the very time the sale was made by the defendant to the plaintiff the former bought of Hoopes twenty-five shares at " a slight reduction " from fifty dollars per share, and had previously bought the other twenty-five shares at thirty dollars. Hoopes was superintendent and manager, and the defendant was secretary of the company, and both were familiar with its affairs. That was certainly some evidence that the stock was not worth seventy-five dollars per share. It is true that the plaintiff did in July, 1893, sell twenty-five shares to Mr. Morton, who was president of the company. The plaintiff said that he transferred it in part payment of some Crown Cork and Seal Company stock, and that no value was agreed upon— that he was anxious to get rid of the Campbell Barrel Company's stock, and he added he did not want any more Crown Cork and Seal Company stock, but he thought he had better take that than nothing. Mr. Morton, on the other hand, testified that they did agree upon the value and that he took in that deal twenty-two shares of the Campbell Company stock at seventy-five dollars and afterwards got three shares at seventy-three dollars. That was evidence proper to be considered by the Court, sitting as a jury, reflecting on the value of the twenty-five shares still held by the plaintiff, but it did not exclude the other evidence. By the tenth prayer the Court held that there could be no recovery for the stock sold to Morton, but as to the twenty-five shares still held by the plaintiff there was evidence tending to prove that they were at the time of the purchase worth less than he paid for them, and no stronger

evidence of that could be well produced than the fact that the defendant, the secretary of the company, purchased from the superintendent and manager of the company the very stock sold to plaintiff at prices greatly below that exacted of him. We think, therefore, there was legally sufficient evidence on that question.

Nor do we think there is any difficulty as to the question whether there was evidence that the plaintiff "relied altogether and exclusively," as alleged in the declaration, on the representation of the defendant as to the value of his stock. The plaintiff's own testimony is to that effect. It is true that he went with the defendant to see the machine, although according to his statement it was not in operation, but he was not buying machines, he was buying stock in this company. If it be conceded that the machine itself was all its owners could wish, that could not control the value of the stock of the company. Did everybody pay eighty dollars per share, as the plaintiff said the defendant told him, did the defendant and others receive blocks of it " in promoting the company? was there some holder of the stock who was compelled to sell by reason of having a mortgage on his house, from which the natural inference to be drawn was that it could be obtained at less than its real value? did the stock truly represent the value of the company's franchises and assets including the machines, the patents on them, etc., and other similar inquiries were relevant to the transaction, and not whether the machine was properly constructed or an improvement on others for the manufacture of barrels, even if a person who knew nothing about such machinery or business could form any intelligent opinion of the machine by looking at it. If, then, the plaintiff's version of what transpired between him and the defendant was correct, there was some evidence that he relied *altogether and exclusively* upon the representations of the defendant and, without discussing at this point whether that was necessary, we think these prayers, as well as the thirteenth, were therefore properly rejected, and there was no error in granting the one offered by plaintiff.

The fourth prayer is a copy of the fifteenth granted by the Court below in the case of *McAleer* v. *Horsey*, 35 Md. 439. It was not discussed by the Court of Appeals in that case, having been granted at the instance of the defendant, who took the appeal. All that was said about it was, that six prayers of the defendant, including the fifteenth, were granted, " and in connection with the two granted at the instance of the plaintiff, the law of the case seems to have been fairly presented the jury. It is clear that there has been no error committed in this respect to the prejudice of the defendant." The intimation is that in some of the prayers the defendant possibly got more than he was entitled to. But however that may be, we do not see the application of that prayer to the facts in this case. There is no question raised by the evidence as to whether the defendant made the representations charged in the declaration or certain other false representations. The defendant denies that he made those relied on by the plaintiff, but he does not admit that he made some other false statements. Of course it was necessary for the Judge below to hold that he could not find for the plaintiff if he found that in point of fact the defendant did not make in substance and legal effect the representations charged in the declaration, although the plaintiff thought he did. The plaintiff swore that the defendant did make the material representations charged in the declaration and the defendant denied that such was the case. In *Weaver* v. *Shriver*, 79 Md. 541, the defendant denied that he made the representations and the plaintiff claimed he did, yet this Court held that this same prayer was properly rejected because there was no evidence legally sufficient to sustain it, and it was not required to prove the exact language used in the representations and set out in the declaration, but proof of it in substance and legal effect was sufficient. In this case no injury could have been done the defendant in rejecting the prayer, as it was not applicable to the facts in the case, especially as by the ninth prayer the Court. declared that to entitle the plaintiff to

recover it was necessary to believe from the evidence the defendant made to the plaintiff the representations as set forth in the declaration, etc., thereby practically covering the material parts of this prayer, if it had any application.

The record does not show any admission or statement by the plaintiff that his evidence before the grand jury was at variance or inconsistent with his testimony as given in this case, and the most the defendant could ask was to have the fact passed on by the Court. That was done by the modification of the fifth prayer. The change in the ninth by inserting the word " substantially " we think was correct, and sustained by the cases of *Weaver* v. *Shriver* and *McAleer* v. *Horsey*.

The only remaining question is presented by the eighth prayer. By it the Court was asked to say that if it, sitting as a jury, found that the plaintiff in making the purchase of the stock did not rely and confide *altogether and exclusively* upon the faith and truth of the statements of the defendant, the verdict should be for the defendant. The Court modified it by striking out " *altogether and exclusively* " and substituting therefor " *mainly and substantially.*" That the prayer as modified properly presented the law as an abstract proposition can admit of no question. In *McAleer* v. *Horsey* the Court said : " If, however, the plaintiff mainly and substantially relied upon the fraudulent representations he will have his action for damages though he were in part influenced by other causes." The contention of the appellant is, however, that inasmuch as the declaration alleged that the plaintiff relied " altogether and exclusively upon the faith and truth of these statements and not upon any other cause' or inducement whatever," there was a fatal variance between *allegata* and *probata.* We have already said that we thought there was evidence tending to prove that the plaintiff did altogether and exclusively rely on the truth of the statements, and if the evidence offered had been objected to or there had been a motion or prayer

asking the Court to strike it out on the ground of variance, we think the Court would have properly admitted it and let it remain in. The strict rule that once prevailed has been very much relaxed for the purposes of justice, even in actions *ex contractu,* where the rule is more rigidly enforced than in actions *ex delicto,* and although the *probata* must still conform to the *allegata,* it is sufficient if the substance of the issues be proved, and therefore, if it be conceded that this question was so raised by this prayer as to require us to determine whether evidence that the plaintiff mainly and substantially relied on the faith and truth of the statements of the defendant, was admissible and sufficient to justify a recovery under this declaration, we think there is no difficulty about it. In actions *ex contractu* the terms of the contract sued on must be at least substantially proven as alleged, so as not to take the defendant by surprise, and also to protect him from another suit on the same cause of action, and even in a case of this character, if there be any substantial variance between the allegations and proof of the false representations, the defendant would have cause to complain. But the plaintiff did offer evidence tending to prove in substance the allegations as to what the false statements were, and he alleged more than the law required him to allege or prove as to his confidence and reliance on the statements. The prayer as modified declared that the verdict must be for the defendant unless the evidence showed that the plaintiff did rely and confide upon the faith and truth of the statements to the extent that the law requires that to be done—that is to say *mainly and substantially.* The defendant could not have been taken by surprise or have been sued again on this cause of action, and therefore could not possibly have been injured by such a modification of the prayer.

Of course, in what we have said above we do not mean to express any opinion as to whether in fact the false representations were made, as that was for another tribunal to determine, but only that there was legally sufficient evi-

dence of it.	Finding no error in the rulings of the Court
the judgment must be affirmed.

*Judgment affirmed with costs.*