## DASSING ET AL. *v.* FRED FREDERICK MOTORS, INC.

[No. 43, September Term, 1965.]

*Decided December 10, 1965.*

The cause was argued before HAMMOND, MARBURY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Jack Pinkston* for the appellants.

*William V. Meyers,* with whom was *Leo Wm. Dunn, Jr.,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Edward H. Dassing and his wife, Doris Dassing, filed a declaration on November 27, 1962, in the Circuit Court for Prince

George's County, alleging that Fred Frederick Motors, Inc. had fraudulently sold to them a 1961 Plymouth station wagon, representing to them that it was a new and unused automobile, for the sum of $2,633; that they relied on this representation as to newness, and that such representation was known by the seller to be untrue. Plaintiffs-appellants in their declaration tendered to defendant the Plymouth station wagon and claimed compensatory damages of $3,000 and punitive damages of $15,-000.

On January 5, 1965, a jury trial was held, Judge Loveless presiding. At the close of the plaintiffs' case the trial judge granted defendant's motion for directed verdict on the ground that the plaintiffs had not proven what damages were caused by the fraudulent conduct of the defendant. From the judgment entered following the motion, the appellants appealed.

At the trial, appellants presented evidence that they had, on October 5, 1961, purchased a 1961 Plymouth from Fred Frederick Motors, Inc. for the sum of $2,575, plus tax of $51.50, and notary and other incidental expenses of $6.50. The Dassings testified that an agent of the appellee had represented this car to be new and unused, that this representation was relied on by them, and that absent a belief that the car was new they would not have purchased it. After the purchase they learned from the Department of Motor Vehicles that the car was not new, as it had been previously sold by Fred Frederick Motors, Inc. to a third party, who kept the car for three and a half months before it was re-acquired by the appellee.

As to damages, the appellant presented proof that someone had represented on the application for transfer of title from the appellee to the appellants that the purchase price of the automobile was $2,300. The signature on this application appears to be that of Mrs. Dassing, one of the appellants, but she denied that she signed it, and the signature was notarized by Fred Frederick, president of the appellee corporation. Appellants' only expert witness as to damages was Fred Frederick, who testified that the dealers' list price for a new car of the same make and model as the one sold to the Dassings was approximately $3,350 in 1961. Frederick also testified that on October 5, 1961, the date of the purchase by the Dassings, which would

be approximately at the end of the model year, the price of a new car of the model and type that the Dassings bought would be about $2,900-$3,000. He was not asked his opinion as to the value of the used car which the appellants purchased.

The sole question on this appeal is whether the trial court was correct in directing a verdict for the defendant-appellee due to appellants' failure to prove damages. We think that he was. The proper measure of damages in this State, in an action such as this where fraud or misrepresentation is alleged, is the difference between the amount of the purchase price the buyer has paid and the actual worth of the object purchased on the date it was sold. *Standard Motor Co. v. Peltzer*, 147 Md. 509, 514, 128 Atl. 451. In *Peltzer*, a case involving a buyer's suit against the seller for the latter's fraud in misrepresenting the age or model of a truck, our predecessors referred to the fact that "* * * the buyer claimed the difference between the amount of the purchase price he had paid and the value placed by his witnesses on the truck as it was, which is according to the measure of damages regularly adopted in this State. *McAleer v. Horsey*, 35 Md. 439; *Robertson v. Parks*, 76 Md. 118; *Cooke v. Gill*, 83 Md. 177; *Pendergast v. Reed*, 29 Md. 398." The above test is commonly referred to as the "out of pocket" method of ascertaining damages. See Annot. 124 A.L.R. 37, 59-60.

The appellants did not produce any testimony, expert or otherwise, as to the actual value of this used 1961 model car at the time it was purchased by them. They did not show what were their "out of pocket" damages suffered as a consequence of the alleged fraud, and the trial judge was correct in taking the case from the jury rather than allowing it to speculate as to what were these damages. Punitive damages were, of course, not allowable in the absence of proof of compensatory damages.

In their brief the appellants strenuously contend that this is a case of first impression in this State and that Maryland should adopt the "benefit of the bargain" test for the determination of damages. Citing *inter alia* 24 Am. Jur., *Fraud and Deceit*, Section 227, p. 55, appellants set their test out to be: "* * * the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representations had been true." Even if the trial

court had adopted this rule, the appellants have still failed to introduce evidence to fill in the first part of that formula, *i.e.,* the actual value of the used car at the date of sale. Appellants contend that the $2,300 figure on the application for transfer of title is opinion evidence as to the value of the used car. Even if it be assumed that this figure is an opinion and not an attempt to defraud the State out of a portion of the taxes due on the sale of the car, there is nothing to indicate that the opinion was expert in character, since there was no testimony as to who expressed that opinion.

Lastly, appellants assert that another item of damages which they proved was that they had been defrauded of $5.50 by the appellee's representation that the full tax paid by them, $51.50, would be remitted to the State, instead of the $46 which appellee actually sent to the tax collector. Since it is not controverted that the proper tax to be paid by the purchasers was $51.50 and the appellants paid this amount to the appellee who was acting as agent for the State, it was the State and not the appellants who suffered by this claimed failure to remit.

*Judgment affirmed, costs to be paid by appellants.*