## HINKLE *v.* ROCKVILLE MOTOR COMPANY, INC.

[No. 480, September Term, 1970.]

*Decided June 4, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*John T. Bell,* with whom were *Charles W. Bell, Frank S. Cornelius* and *Bell & Bell* on the brief, for appellant.

*J. Willard Nalls, Jr.,* for appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Donald Hinkle (Hinkle), purchased a 1969 Ford Galaxie automobile from the appellee, Rockville Motor Company, Inc. (Rockville), in January of 1970. In a declaration filed on May 7, 1970, in the Circuit Court for Montgomery County, Hinkle alleged that Rockville fraudulently represented to him at the time of sale that the 1969 Galaxie was a new car when, in fact, it had over 2,000 miles on the speedometer and had been involved in an accident in the State of Tennessee. Hinkle discovered the mileage recorded on the speedometer while driving home on the day of the sale. He brought this to the attention of Rockville and an adjustment was made whereby he was compensated in the amount of $109.86, the amount of his first payment, in exchange for a release from any further claims except for those falling within his standard new car warranty. The adjustment for mileage was made on January 27, 1970. Hinkle maintains that it was not until April, 1970, that he learned the automobile had been involved in an accident in Tennessee in July of 1969. It is alleged in the declaration that the front and rear portions of the automobile had been welded together after having been severed in the accident. Hinkle alleged that Rockville had knowledge of

the accident but that it "willfully concealed the true circumstances" and "willfully, maliciously and fraudulently misrepresented the quality and condition of the aforesaid Ford vehicle" and that he relied on these misrepresentations to his detriment. Damages were claimed in the amount of $100,000.

At the close of Hinkle's case, Rockville moved for a directed verdict. In granting the directed verdict, the trial court (Shearin, J.) only found it necessary to consider Rockville's argument that Hinkle's failure to produce evidence in regard to the automobile's actual value at the time of sale deprived the jury of the only permissible standard by which the jury could determine the existence or amount of damages. The trial court determined this to be a correct statement of the law and directed a verdict in favor of Rockville notwithstanding the fact that Hinkle had produced expert testimony that the effects of the accident could be remedied and the car returned to new car condition by the expenditure of $800 for repairs. For the purposes of this appeal, we will consider only this question of law ruled on by the trial court. Since the case is before us on directed verdict, all inferences in regard to the existence of actionable fraud and inadequacy of the release will be considered in favor of Hinkle.

A review of the Maryland cases indicates some confusion in regard to the measure of damages allowable in this State in cases of fraud and deceit. Once past the universally accepted standard that a plaintiff may "recover such damage as the jury may find to have been sustained as the direct consequence of the alleged false representation," the difficulty begins. *Buschman v. Codd,* 52 Md. 202 (1879) ; *Robertson v. Parks,* 76 Md. 118, 24 A. 411 (1892) and *Weaver v. Shriver,* 79 Md. 530, 30 A. 189 (1894).

A majority of States will allow the plaintiffs to recover the "benefit of his bargain" if sufficiently proved. The theory is to compensate the plaintiff as though the

transaction had been carried out as represented. 37 Am.Jur.2d *Fraud & Deceit* § 353 (1968) ; 37 C.J.S. *Fraud* § 143 b. (2) (1943) ; Note, *Measure Of Damages For Fraud And Deceit,* 47 Va.L.Rev. 1209 (1961).

Other States restrict the plaintiff to his "out of pocket" losses. The classic formula is the value of the object as represented less its actual value at the time of sale. The theory is to return the plaintiff economically to the position he was in prior to the fraudulent transaction thus allowing him recoupment of actual losses but not expected gain. This rigid limitation on the nature of recovery is often explained as being required because the action is one of tort rather than contract and that it has always been recognized that tort remedies are designed to compensate for actual harm suffered. 37 Am.Jur.2d *Fraud & Deceit* § 355 (1968) ; 37 C.J.S. *Fraud* § 143 b. (3) (1943).

A review of the Maryland cases rather indicates that Maryland is one of those States which has not adopted a rigid stand as far as adopting one of the above theories to the exclusion of the other. Both theories have been used and approved in Maryland. Because of the confusion and *dicta* in several Maryland cases seeming to indicate that Maryland is a State that exclusively employs the "out of pocket" remedy, we will review the prior Maryland cases in this area.

In *Pendergast v. Reed,* 29 Md. 398, 404-05 (1868), the defendant offered to sell the plaintiff an interest in his boat for ⅛ of its purchase price which he represented as being $34,000. The actual purcase price was $25,500. The plaintiff, having paid ⅛ of the fraudulently misrepresented price, sued for damages. It can be seen that this is an instance where the plaintiff paid the represented value so that the damage would be the same using either the "out of pocket" or "benefit of bargain" formula. The Court did, however, sanction the "benefit of bargain" remedy when it stated: "He had the right to all the profits of his purchase and contract as he made it,

and it is no answer to his action to say, that though the representation was false, yet the actual *value* of the thing sold is equal to what false representations induced him to pay for it." The Court later stated the following "benefit of bargain" formula for the measure of damages: "The measure of damages may therefore be stated to be either the difference between one-eighth of the actual, and one-eighth of the represented cost rate, or one-eighth of the difference between the actual and represented cost rate of the entire vessel." This latter formulation was given an instruction to the jury at the request of the plaintiff below and challenged on appeal by the defendant in that it could mislead the jury into awarding the whole rather than one-eighth of the difference. In affirming the judgment, this Court held that the instruction was correct.

In *McAleer v. Horsey*, 35 Md. 439 (1872), the defendant and appellant, had been granted an "out of pocket" instruction below and there was no cross-appeal by the plaintiff-appellee bringing this question before the Court on appeal.

In *Buschman v. Codd*, 52 Md. 202 (1879), the trial court gave a general instruction to the effect that the plaintiff was entitled to damages that were a direct result of the fraudulent misrepresentation. This Court citing *McAleer* upheld the instruction over the defendant-appellant's challenge, saying that it was tantamount to the "out of pocket" instruction considered proper in *McAleer*. The Court did state the "out of pocket" formula as the rule for measuring damages in these cases when the property sold has a marketable value. The posture of the case, however, was such that the Court was only required to approve the use of the "out of pocket" measure used below and not to set it forth as the exclusive or only measure of damages. Such a holding would only be required if an otherwise permissible measure of damages were rejected because of the exclusivity of the "out of pocket" measure of damages.

*Robertson v. Parks,* 76 Md. 118, 24 A. 411 (1892) which has sometimes been cited as support for the "out of pocket" theory of damages did not really deal with that issue at all. *Robertson* held that the defendant's representations that the stock he sold the plaintiff would pay 20% dividends, did not furnish a ground for recovery because the defendant was only stating his opinion and not representing a fact upon which the plaintiff was entitled to rely.

In *Weaver v. Shriver,* 79 Md. 530, 30 A. 189 (1894), the trial court had directed a verdict against the plaintiff on the ground that he could not bring his tort action for fraud and deceit when he had not paid the full consideration provided in the contract of sale. This Court reversed the trial court, holding that the plaintiff could bring the action in this situation. The Court went on to state the general rule of damages for fraud and deceit, namely, "that plaintiff is entitled to recover such damage as the jury may find he has sustained as the direct consequence of the alleged false representations." The defendant had represented certain stock as being worth $100 per share and had stated that this was the price paid by other stockholders when in fact the other stockholders had paid $50 per share. At the time of the action, plaintiff had only paid $50 of his promised $100 per share. The Court stated that he would not be entitled to recover the $50 per share paid because at this point prior to paying the other $50 per share he had not suffered from the deceit.

In *Cook v. Gill,* 83 Md. 177, 34 A. 248 (1896), this Court upheld the verdict for the plaintiff over the defendant's contentions that the plaintiff had failed to prove the alleged false representations, his reliance on them, or that the stock in question at the time of sale was worth less than what he had paid for it. The trial court had used the "out of pocket" formula for damages but the question of whether or not this was the only allow-

able measure was not before the Court as there was no objection by the plaintiff.

Again, in *Standard Motor Co. v. Peltzer*, 147 Md. 509, 128 A. 451 (1925), the plaintiff-appellee had requested and received the "out of pocket" measure of damages below. The plaintiff had purchased from the defendant a 1917 model truck that the defendant had represented as a 1920 model truck with a Continental Engine. At trial the plaintiff only requested the difference between the actual value of the 1917 model truck and the price he paid. When the defendant attacked this measure of damages as being inappropriate, this Court simply held that the plaintiff was entitled to this measure of damages, not that he would have been limited to this measure. The Court cited *McAleer, Robertson, Cook* and *Pendergast* in support of its statement that the "out of pocket" "measure of damages [had been] regularly adopted in this State." This is a correct statement inasmuch as the "out of pocket" measure had been employed more often than the "benefit of bargain" measure, although the citing of *Pendergast* where the Court set out the "benefit of bargain" formula might have been somewhat misleading. But here again, from the posture of the case and the language used, the Court was called upon merely to approve the "out of pocket" measure of damages and not to set it as a limitation.

The case most heavily relied upon by Rockville in support of its contention is *Dassing v. Fred Frederick Motors, Inc.*, 240 Md. 621, 214 A. 2d 925 (1965). The Dassings paid $2,633 for a 1961 Plymouth fraudulently represented to them as being new. In fact, the automobile had previously been sold to and retained by a third party for 3½ months before being reacquired by the Frederick Motors. This Court sustained a directed verdict in favor of Frederick Motors because the Dassings failed to establish any damages. Judge Marbury quoted the language from *Peltzer, supra,* that the "out of pocket" measure of damages had been regularly used in this State in

cases of fraud and misrepresentation. That the language was meant to reach no further in *Dassing* than in *Peltzer* is clear, because the case turned on the fact that there was no evidence in regard to the *existence of damages of any kind. Dassing* stands for the proposition that if you do not prove damages you cannot recover, not that recovery is precluded unless one measure or formula is used to the exclusion of all others. This is evidenced by the fact that the opinion goes on to point out, without purporting to accept or reject the "benefit of bargain" measure of damages, that it would also be of no avail to the Dassings as the same unproved element (value of the automobile at time of purchase) required to compute "out of pocket" damages was likewise unavailable to compute "benefit of bargain" damages. Since there was no proof that the car itself was defective and required an outlay of funds by the Dassings in order to make the actual and represented automobile value correspond, it was necessary and proper to take the case from the jury as it would have been sheer speculation on their part in regard to the existence or measure of possible damages.

A similar case and the most recent one on this question is *Beardmore v. T. D. Burgess Co.*, 245 Md. 387, 226 A. 2d 329 (1967). Beardmore purchased a house that was represented by Burgess as having city water and sewer connections. In fact, the house was not connected to the city sewer and Beardmore was going to be required to pay a $600 assessment for the connection. Beardmore sued to recover the $600 in an action of fraud and deceit. He offered no evidence in regard to the actual value of the house at the time of purchase so that the trial court directed the verdict against him for failure to prove "out of pocket" damages. The theory was that if the actual value of the house was $600 greater than the purchase price or, saying it another way, if the actual value of the house without the sewer connection was equal to or greater than the purchase price, there would be no "out of pocket" damages. On appeal it was stipulated by the

parties at oral argument that the fair market value of the property at the date of purchase was at least equal to the purchase price. Under a strict application of the "out of pocket" tort theory of damages, this stipulation would seem to preclude recovery. Despite the fact that the $600 was an unavoidable obligation of the homeowner, theoretically, Beardmore could forgo the benefit of his bargain, sell the house for at least what he paid for it and thus rid himself of the $600 obligation and suffer no economic loss as a result of the misrepresentation. This Court, exhibiting a flexible approach to damages in these cases, held that Beardmore could recover the $600 as damages. In spite of the Court's characterization of this as being in the nature of an "out of pocket" remedy, conceptually it more resembles the "benefit of bargain" theory approved in *Pendergast, supra.*

From the above cases, it can be seen that this Court has never taken a rigid stand in adopting one theory of damages to the exclusion of all others but has rather employed a flexible approach. The idea that this Court would preclude all but "out of pocket" remedies in fraud and deceit cases in order to preserve a conceptual gulf between tort and contract actions is further negated by the following statement made in *Webster v. Woolford,* 81 Md. 329, 330, 32 A. 319 (1895) and cited with approval in *Russell v. Stoops,* 106 Md. 138, 66 A. 698 (1907) and *Knickerbocker Ice Co. v. Gardiner Dairy Co.,* 107 Md. 556, 69 A. 405 (1908) :

> "The action it is true, is in the nature of an action for tort [deceit], but it is a tort founded on a breach of contract in regard to the sale of property, and, there being no question as to exemplary damages, the rule as to measure of damages is the same as in cases for breach of contract in regard to the sale of property."

The Court was considering a question in regard to the extent of allowable consequential damages under the rule

of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145 (1854). The breadth of the statement, however, indicates no reservation as to what measure of damages the plaintiff might elect at the outset.

The present situation is materially different from the *Dassing* case where the plaintiffs failed to prove any damages. Hinkle has shown, prima facie, the existence of measurable damages by providing expert testimony to the effect that it would require an expenditure of $800 on his part in order to put the automobile in new car condition as it was represented. This "cost to conform" measure of damages is a permissible alternative formula for computing damages of the "benefit of bargain" nature which in some cases can be more efficient and direct than the broader classic formula. 37 Am.Jur.2d § 357 (1968). This "cost to conform" measure of damages was approved in *Beardmore, supra.* There was no alternative remedy in *Beardmore* because it involved land which is unique and not subject to replacement. Here, an automobile, which can be replaced, is involved so that Rockville should have the opportunity to show if possible that it could replace Hinkle's automobile with a new one of the same make and model as originally represented at a lesser cost than the $800 required for repair of the one in question.

In summary, the review of the Maryland cases on this question of the proper measure of damages in fraud and deceit cases demonstrates that this Court has applied the so-called "flexibility theory" without heretofore expressly stating the factors to be considered in its application. *Selman v. Shirley,* 161 Or. 582, 609, 85 P. 2d 384, 91 P. 2d 312, 124 A.L.R. 1 (1938), the first case to define expressly this flexible approach, set forth the following four rules as a guide for the proper measure of damages in these cases.

> "(1) If the defrauded party is content with the recovery of only the amount that he ac-

tually lost, his damages will be measured under that rule;

"(2) if the fraudulent representation also amounted to a warranty, recovery may be had for loss of the bargain because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone;

"(3) where the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained; and

"(4) where * * * the damages under the benefit-of-the-bargain rule are proved with sufficient certainty, that rule will be employed."

The statement of these rules has been favorably reviewed and quoted by Prosser, *Torts*, § 105 (3rd ed. 1964) at p. 752; 37 Am.Jur.2d § 352 (1968) at pgs. 472-73; and Note, 47 Va.L.Rev. 1209, 1214 (1961). This position was advocated by Professor McCormick who wrote, "In the first place, it seems that in every case the defrauded plaintiff should be allowed to claim under the 'out of pocket' loss theory if he prefers. In the second place, the plaintiff should be allowed to choose the other theory, and recover the value of the bargain as represented, if the trial judge in his discretion considers that, in view of the probable moral culpability of the defendant and of the definiteness of the representations and the ascertainability of the represented value, the case is an appropriate one for such treatment." McCormick, *Damages* § 122 (1935) at p. 454. *Williston on Contracts* § 1392 (Rev. Ed. 1937) at p. 3886 and *Sutherland on Damages* § 1172 (4th ed. 1916) at p. 4409 both indicate a preference for allowing the plaintiff to recover the benefit of

his bargain in these cases. *Sedgewick on Damages* § 781 (9th ed. 1912) at p. 1629-31, while recognizing that the majority rule allows "benefit of bargain" recovery, favors a strict adherence to the "out of pocket" remedy in accordance with English common law as set forth in *Peek v. Derry*, 37 Ch. Div. 541 (1888). The *Restatement of Torts*, § 549 (1938) also sets forth the "out of pocket" rule of damages.

After the above review of cases and texts on the subject, it is concluded that the trial court erred in directing the verdict against Hinkle for failure to produce evidence upon which damages could be awarded. Hinkle's evidence in regard to the cost of necessary repairs demonstrated the existence of damages and provided an adequate measure upon which they could be predicated.

*Judgment reversed and case remanded for new trial, the appellee to pay the costs.*