DONALD E. SCHWARTZBECK ET UX. *v.* LOVING CHEVROLET, INC.

[No. 502, September Term, 1974.]

*Decided June 25, 1975.*

140

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*S. Richard O'Day* for appellants.

*Alan W. Margin* for appellee.

POWERS, J., delivered the opinion of the Court.

In July of 1970 Donald E. Schwartzbeck purchased a 1970 Chevrolet Impala automobile from Loving Chevrolet, Inc., a dealer in Silver Spring. When Mr. Schwartzbeck first spoke to Robert K. King, Loving's salesman, he said that he was interested in buying a "demonstrator". The car he bought was, he said, represented to him to be a demonstrator. It had been driven 4,040 miles. The new car warranty was transferred to him as a part of the transaction.

After experiencing mechanical difficulties with the car, and after learning that the car had in fact been previously sold to and owned by a private individual, Mr. Schwartzbeck attempted to persuade Loving to rescind the entire deal. Loving did not agree. In June, 1972, Mr. Schwartzbeck, joined by his wife, filed an action at law for damages in the Circuit Court for Montgomery County, against Loving Chevrolet, Inc. The declaration, in a single count, alleges the elements of common law deceit. It claims damages in the sum of $1,400, which was alleged to be the difference in market value between the automobile actually received, and a true 1970 demonstrator model. The declaration also claimed exemplary or punitive damages in the amount of $30,000.

A demurrer to the declaration was overruled, without a hearing, and Loving pleaded the general issue, in contract

and in tort. Discovery procedures were pursued by both sides. The case was tried in the Circuit Court for Montgomery County on 22 April 1974, before Judge John J. Mitchell, without a jury. At the conclusion of all of the evidence, and argument of counsel, the trial judge took the case under advisement. On 2 May 1974 he filed an opinion and order, finding in favor of the defendant. On 8 May 1974 judgment was entered in favor of Loving Chevrolet, Inc. for costs. This appeal was taken from that judgment.

The questions presented by this appeal, as the appellants put them in their brief, are:

"Was it error for the Court not to find a single trace nor bare minimum of nominal compensatory damage using either the 'out of pocket' 'benefit of bargain' or 'flexible theory of damages' in a case where plaintiff sought compensatory and punitive damages and by clear and convincing evidence had already proved that 1) a false representation was made, 2) with full deceitful knowledge, 3) for the purpose of defrauding, 4) upon which plaintiff with reason relied, and 5) that he would not have done the thing from which the damage resulted if it had not been made.

A.  What is the Quantum of evidence required?

B.  Did the plaintiff satisfy that standard?"

More to the point, we believe, the appellee, in its brief, says:

"The sole question presented by this appeal is whether the trial court was clearly erroneous in finding that the Appellants had failed to prove that they actually suffered damage directly resulting from the misrepresentation."

No purpose would be served here by an analytical discussion of the elements of the common law action of deceit, sometimes referred to as fraud. It is sufficient to refer to and to quote briefly from two cases in which the

Court of Appeals has discussed and clearly explained the elements of the action.

In *Babb v. Bolyard*, 194 Md. 603, 72 A. 2d 13 (1950), an action of deceit based upon an alleged misrepresentation in the sale of a used automobile, the Court of Appeals quoted with approval from *Boulden v. Stilwell*, 100 Md. 543, 60 A. 609 (1905), also an action of deceit, where the Court said, at 552:

> "The foundation of the action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit. There must be, either knowledge of the falsity of the representation, or such reckless indifference to truth in making it, as is held equivalent to actual knowledge. The fraud must be material, by which is meant that without it, the transaction would not have been made. It must be a statement of an alleged existing fact, or facts, and not merely of some future or contingent event, or an expression of opinion as to the subject of the statement. The party to whom it is made must rely upon its truth, and must have the right, as a person of ordinary business prudence, to rely upon it, 'otherwise it is his own folly or fault, for the consequences of which he cannot ask relief of the law;' and finally there must be damage directly resulting from the fraud."

In *Appel v. Hupfield*, 198 Md. 374, 84 A. 2d 94 (1951), the Court of Appeals enumerated the elements, at 378:

> "In order to entitle the plaintiff to recover in an action for deceit it must be shown: (1) that a representation made by the defendant was false; (2) that either its falsity was known to the defendant or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to him; (3) that the misrepresentation

was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation but had the right to rely upon it with full belief in its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation."

Judge Mitchell found that the evidence in this case established all of the required elements, except the element of damage resulting from the misrepresentation. Judge Mitchell said in his opinion:

"This Court is convinced that Mr. King [Loving's salesman] represented the automobile in question as a demonstrator when, in fact, it was simply a used car. This Court is also convinced that Mr. King knew very well, what he was doing — deceitfully misrepresenting, to an unsophisticated customer, that he was selling him what he wanted while in reality he was simply selling a car off the used car lot. Mr. Schwartzbeck purchased the car relying on Mr. King's representations. He had no reason to disbelieve him and his testimony revealed that he would not have concluded the transaction but for the misrepresentation."

After condemning such sales tactics, the trial judge went on to say:

"However, the plaintiffs in this case have chosen to rely on a theory of common law fraud. In so doing, they were bound to prove the essential element of damages. This, they have failed to do."

The evidence offered by the Schwartzbecks described the mechanical difficulties experienced with the automobile, and showed the cost of necessary repairs. The several repair bills proved aggregated less than $100. The trial judge found that none of these repairs was proved to be related to a condition

misrepresented by Loving's salesman. See *Lustine Chevrolet v. Cadeaux*, 19 Md. App. 30, 308 A. 2d 747 (1973).

There was extensive evidence showing the price at which the automobile was sold to Mr. Schwartzbeck, the price at which it was originally sold by Loving to the first owner, and the price at which that owner sold it back to Loving. There was also evidence of average market values, both wholesale and retail, of automobiles of similar make and model. In addition, there was evidence that on the average an automobile classified as a "demonstrator" would sell for a higher price than one classified merely as a "used car".

One of appellants' expert witnesses, a Mr. Charles H. Ridgley, thought the difference in price would generally be about $300 although he said this could fluctuate, and would vary according to the market at a particular time. His testimony was general, and did not relate to the specific automobile involved in this case. He said a demonstrator would be higher because it would carry a new car warranty. Other evidence at the trial indicated that the new car warranty on the model involved was transferable, and was in fact transferred to Mr. Schwartzbeck.

Mr. William S. O'Brian, called by the appellants, described the usual or normal methods of pricing cars. He was experienced in selling cars. He had not seen the Schwartzbeck automobile. He agreed that visual inspection of a car is necessary, and that each car is priced according to the market, its condition, and what the traffic would bear.

Mr. Herbert Cherner, called by Loving, testified to 20 years of experience in the automobile business. He said that whether a car was a "demonstrator" or a "used car" did not determine the price. He said the price was determined by the condition the car was in, the mileage, its appearance, and the going market price of the time. He said that if the warranty was the same, there would be no difference, as long as the cars were equal. He said also that a demonstrator may be a car driven exclusively by a company official, or it may be a car used by one or more salesmen to lend out and demonstrate to customers.

At the time of the trial, three years and nine months after he purchased it, Mr. Schwartzbeck still had the automobile, which by that time had been driven over 50,000 miles.

The scope of our review on appeal is governed by Maryland Rule 1086, which says:

"When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

Rule 1086 is a counterpart of its forerunner, Rule 886, applicable to appellate review in the Court of Appeals. In *A. S. Abell Co. v. Skeen*, 265 Md. 53, 288 A. 2d 596 (1972), the Court of Appeals said of Rule 886, at 55:

"Under this rule we must consider the evidence produced at trial in a light most favorable to the prevailing party there and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed. However, the conclusions of law based on the facts can be reviewed. *Liller v. Logsdon*, 261 Md. 367, 368-69, 275 A. 2d 469 (1971); *Simmons v. B & E Landscaping Co.*, 256 Md. 13, 17, 259 A. 2d 314 (1969)."

Having pointed out that the trial court's ruling on damages is the only question at issue in this appeal, we must now decide whether the court reached the correct conclusions of law on the facts before it, and whether the ruling was or was not clearly erroneous on the evidence.

In 37 Am.Jur.2d, *Fraud and Deceit*, § 283 (1968), it is said:

"It is a fundamental principle of law that with the exception of special cases recognized only in some jurisdictions, in order to secure relief on a basis of fraud either at law or in equity, the person

seeking redress must have been damaged, injured, or harmed as a result of the asserted fraud — or as the principle is often stated, he must thereby have been misled to his hurt. In other words, in order to give rise, under any circumstances, to a cause of action, either at law or in equity, reliance on a false representation must generally result in damage or injury."

"In contradistinction with trespass and other direct injuries for which the complainant is awarded nominal damages if he should fail to plead and prove actual damage, deceit belongs to that class of tort of which pecuniary loss generally constitutes part of the cause of action. In other words, the action of deceit is based on fraud and damage; broadly speaking, it will lie when both concur, and will not lie unless both do concur."

The same text says, in § 293, dealing with proximity and certainty:

"In order to maintain an action for fraud and deceit, it is generally held to be necessary that the fraud be the real, direct, proximate, and immediate cause of the injury or damage. In other words, to sustain an action for deceit, the fraud and injury must be connected and must bear to each other the relation of cause and effect. In order for a false representation or statement to be actionable or remediable, there must be a causal connection between it and the damage sustained. Thus, in order to create a remediable tort, the damage must result proximately from the fraud. It must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause, and the damage must be such as is the natural and probable consequence of the fraud. The damage must also be reasonably certain, or such as can be clearly defined and ascertained. That is to say, the *fact and cause* of

damage, as distinguished from the *amount* of damage, must be reasonably certain; where it is reasonably certain that damage has resulted, mere uncertainty as to the amount of damage will not preclude the right of recovery."

For an exhaustive discussion of the measure of damage as distinguished from the fact of damage, see *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A. 2d 42 (1971). That case involved alleged misrepresentation in the sale of an automobile. The Court recognized that the evidence must show that damage has been sustained, and then went on to discuss alternative approaches to the measure of damages, which it briefly described as "out of pocket" on the one hand, and "benefit of bargain" on the other hand. We are not concerned here with applying either of the alternative measures of damages, because the evidence was not sufficient to persuade the trial judge that any damage resulted from the wrong.

In *Dassing v. Fred Frederick Motors, Inc.*, 240 Md. 621, 214 A. 2d 925 (1965), the plaintiffs sued for compensatory and punitive damages because of alleged fraudulent inducement to buy a used car in reliance on the dealer's representation that the car was new. The Court of Appeals said, at 624:

"The sole question on this appeal is whether the trial court was correct in directing a verdict for the defendant-appellee due to appellants' failure to prove damages. We think that he was. The proper measure of damages in this State, in an action such as this where fraud or misrepresentation is alleged, is the difference between the amount of the purchase price the buyer has paid and the actual worth of the object purchased on the date it was sold. *Standard Motor Co. v. Peltzer*, 147 Md. 509, 514, 128 Atl. 451. In *Peltzer*, a case involving a buyer's suit against the seller for the latter's fraud in misrepresenting the age or model of a truck, our predecessors referred to the fact that ' * * * the

buyer claimed the difference between the amount of the purchase price he had paid and the value placed by his witnesses on the truck as it was, which is according to the measure of damages regularly adopted in this State. *McAleer v. Horsey,* 35 Md. 439; *Robertson v. Parks,* 76 Md. 118; *Cooke v. Gill,* 83 Md. 177; *Pendergast v. Reed,* 29 Md. 398.' The above test is commonly referred to as the 'out of pocket' method of ascertaining damages. See Annot. 124 A.L.R. 37, 59-60.

"The appellants did not produce any testimony, expert or otherwise, as to the actual value of this used 1961 model car at the time it was purchased by them. They did not show what were their 'out of pocket' damages suffered as a consequence of the alleged fraud, and the trial judge was correct in taking the case from the jury rather than allowing it to speculate as to what were these damages. Punitive damages were, of course, not allowable in the absence of proof of compensatory damages."

In discussing *Dassing, supra,* the Court of Appeals in *Hinkle, supra,* said, at 509:

"That the language was meant to reach no further in *Dassing* than in *Peltzer* is clear, because the case turned on the fact that there was no evidence in regard to the *existence of damages of any kind. Dassing* stands for the proposition that if you do not prove damages you cannot recover, not that recovery is precluded unless one measure or formula is used to the exclusion of all others."

The Court of Appeals dealt with the same subject again in *Empire Realty Co. v. Fleisher,* 269 Md. 278, 305 A. 2d 144 (1973), a case in which damages were sought because of alleged fraud in a real estate transaction. The Court said, at 284:

"One suing for fraud or deceit must establish that he sustained damage *by reason of the fraud,* and that

his injury was the natural and proximate consequence of his reliance on the fraudulent act, *Russell v. Stoops*, 106 Md. 138, 66 A. 698 (1907); *Weaver v. Shriver*, 79 Md. 530, 30 A. 189 (1894); *cf. Fowler v. Benton*, 245 Md. 540, 226 A. 2d 556 (1967).

"Appellees address themselves to this proposition by arguing that 'Maryland has adopted a flexible approach to the award of damages in fraud cases,' for which they cite *Downs v. Reighard*, 265 Md. 344, 289 A. 2d 299 (1972) and *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A. 2d 42 (1971). While we did approve in those cases the flexible approach to damages for fraud and deceit, that doctrine applies only to the *measure* of damages, i.e., whether one may recover the 'benefit of his bargain' or is restricted to his 'out of pocket' losses. It does not refer to *liability* for damages, with respect to which the rule mentioned earlier is controlling."

In a case in many ways analogous to the one now before us, *Lustine Chevrolet v. Cadeaux, supra*, this Court reversed a judgment in favor of the plaintiff, who had purchased a demonstrator automobile after it had been represented to her that the car had not been in an accident. The evidence showed that the automobile had in fact been involved in a relatively minor collision, and that the damage had been repaired, but that the representation was knowingly false. The plaintiff in that case had offered proof of numerous mechanical difficulties and malfunctions in the automobile, but we ruled "that there was insufficient evidence to show that the malfunctioning of the car subsequent to its purchase resulted from the damage it had sustained in the accident." 19 Md. App. at 37.

Assuming that the evidence before the trial judge in the present case was sufficient to support a determination either way by him as the finder of the facts, it is clear that there was substantial evidence presented to support Judge Mitchell's finding that the Schwartzbecks proved no compensatory damage. Punitive damages were, of course,

150

not allowable in the absence of proof of compensatory damages. *Dassing, supra,* at 624.

We hold that the trial judge correctly applied the law, and that his judgment on the evidence was not clearly erroneous,[1] and cannot be disturbed.

*Judgment affirmed.*
*Appellants to pay costs.*

---

1. When we say that the judgment of a lower court on the evidence was not clearly erroneous, we are merely expressing our holding in the words of the standard which Rule 1086 requires us to apply. The phrase in no case implies that we think the judgment below was *almost,* yet not *clearly* erroneous. Indeed, a judgment may be so clearly *right* that we would deem any other judgment to be clearly erroneous. The standard of Rule 1086 does not involve a grading process, other than "pass" or "fail".