## L. BATES RUSSELL *v.* HESTER V. STOOPS.

*Insufficiency of declaration in action of deceit—Measure of damages—Instruction.*

Defendant agreed to convey to plaintiff a farm, subject to a mortgage, in consideration of plaintiff's conveyance to him of a house and lot; and deeds of the properties were accordingly executed. At that time, a year's interest was due on the mortgage, and a few months after the transfer, the mortgage was foreclosed and the farm bought in by the defendant. The plaintiff then brought this action of deceit, alleging that the defendant had falsely represented that the interest had been paid on the mortgage to the date of transfer, and thereby induced plaintiff to exchange the properties. The declaration concluded that by reason of said false representation of the defendant, plaintiff was de-

prived of the ownership of the house and lot and suffered damage thereby. *Held*, that a demurrer to the declaration should be sustained, since the alleged fraud related to the mortgage on the farm while the damages claimed are not for the loss of the farm but for the loss of the house and lot.

In an action of deceit, a plaintiff is not entitled to recover exemplary or punitive damages, unless there be proof of malice or breach of trust on the part of the defendant.

In an action of deceit, the jury should be informed as to the proper measure of damages, and it is error to instruct them that the plaintiff is entitled to recover such damages as they find he has sustained as the direct consequence of the false representation and which loss he could not have prevented by the exercise of ordinary care.

When the fraud alleged is that the defendant induced the plaintiff to purchase property subject to a mortgage by a false representation that the interest on the mortgage had been paid to date, the defendant cannot be held to have contemplated, as a probable result o such statement, that plaintiff would be unable to pay the interest, and that the mortgage would be foreclosed, resulting in a loss of the property to the plaintiff, and consequently, there being nothing to show that the defendant designed to mislead the plaintiff so as to cause a loss of the property, he is entitled to recover only the amount of interest due.

When the question at issue in an action of deceit is whether the defendant did or did not make a certain statement of fact, the defendant is not entitled to have the jury instructed, that when the transaction challenged admits equally of an honest or dishonest construction, it is the duty of the jury to adopt the construction in favor of honesty and fair dealing.

*Decided May 17th, 1907.*

Appeal from the Circuit Court for Kent County (CROTHERS, and ADKINS, JJ.)

The case was argued before BOYD, PEARCE, SCHMUCKER BURKE and ROGERS, JJ.

*John D. Urie*, for the appellant.

*William W. Beck* and *Lewin W. Wickes*, for the appellee.

BOYD, J., delivered the opinion of the Court.
This is an appeal from a judgment rendered against the ap-

pellant in favor of the appellee in an action of deceit. On May 12th, 1905, the appellant and the appellee, together with her husband, entered into an agreement for exchange of properties—that of the former being a farm containing about 131 acres of land, which was subject to a mortgage of $2,000 due to J. E. Hurlock, and that of Mrs. Stoops being a house and lot in Chestertown. The appellant also agreed to pay Mrs. Stoops $250 "for the landlord's interest in the farm for the year 1905," and to give her poesession on January 1st, 1906. She had agreed to give him possession of the house and lot on July 1st, 1905. The deeds were duly executed and delivered—that of the appellant and his wife to the appellee containing this covenant; "And it is furthermore understood that said farm is subject to a mortgage to J. Edward Hurlock for two thousand ($2,000) dollars, which the said Hester V. Stoops agrees to assume and pay, and the said L. Bates Russell and Iola K. Russell covenant that they will warrant specially, except as to said mortgage, the above described lands and premises."

The appellee gave the appellant possession of the house and lot in June, 1905, and she took possession of a tenant house on the farm that month—the main house being occupied by a tenant who was entitled to possession until January 1st. The mortgage was dated August 3rd, 1901, and was payable one year after date, with interest from date, payable semi-annually, but it was still held by Mr. Hurlock who had agreed with the appellant to accept the interest annually. It contained the usual provision in case of default in payment of the principal, interest or any part thereof, or in any covenant or condition in the mortgage, and required an insurance of $1,200 to be kept on the improvements for the benefit of the mortgagee. At the time the agreement was made, and when the deeds were delivered, interest was unpaid on the mortgage from August 3rd, 1904, and on August 30th, 1905, the insurance policy, which had been taken out for three years, expired. The foundation of this suit is that the appellee contends that the appellant falsely and fraudulently represented to her that all

arrears of interest had been paid to the date of the contract, that the mortgage debt bore interest only from that date, and that no interest would be demanded or required to be paid by her until after wheat harvest in 1906; that defendant knew the representations to be false, and made them with the intent to induce her to enter into the contract and exchange the properties, which she did, relying upon the representations.

Shortly after the year's interest became due (in August, 1905), it was demanded of the appellee, but she did not pay it and the mortgagee assigned the mortgage to John D. Urie on November 15th, 1905. On the next day, which was Thursday, he wrote to the appellee to make some arrangement by the following Saturday. That not being done, Mr. Urie filed a bond on the next Monday and again notified the appellee "that her farm would be advertised unless she fixed up the mortgage." The mortgage provided for one-half commissions if paid after the bond was filed, and $25 for preparing and furnishing the bond. The appellee failed to arrange for the mortgage, and Mr. Urie, as assignee, advertised the property and sold it the latter part of December, 1905, to the appellant for $2,450. The appellant had sold the property he had received from the appellee for $2,000 a few days after the transfer to him, in May, 1905. He denied the statement about the interest, and claimed he had purchased and paid for the crops with the $250 in part to enable her to pay the interest, $120 of which would be due about August 1st, 1905. He also testified that after he had purchased the farm at the mortgagee's sale he offered it to the plaintiff at what he gave for it and offered to let half of the purchase money remain on the farm. Which ever version was in fact true, the net result was that the appellant had sold the property he had received from the appellee for $2,000 a few days after the transfer to him, he then obtained his farm (which he valued at $4,000 in the sale to the appellee) for $2,450, which paid off the mortgage given by him, and he had only paid $250 in cash to the appellee. His total loss could not exceed the $250, plus the difference between the amount of the mortgage with interest thereon,

and such taxes as were then due on the farm, and the $2,450. The appellee had received the $250, out of which she had to pay the expenses of seeding the wheat in the fall of 1905 (for which she received no return), and such other expenses as she incurred, and never did get possession of the entire farm which she had purchased.    Mr. Urie, the appellant's attorney, who drew the agreement but made no reference to the interest on the mortgage, sold the property under the mortgage within six weeks of the time it was assigned to him, and will receive the difference between what he paid for the mortgage ($2,154), plus expenses of sale, and the purchase price($2,450). Without further comment on the facts, it is not surprising that a jury rendered a verdict for a substantial sum, but whatever we may think of such transactions it is, of course, our duty to determine the case according to the established principles of law without regard to results, if not within the protection of those principles.

The questions before us are presented by a demurrer to the *narr.* and exceptions to granting the plaintiff's prayer and rejecting the first and fourth prayers offered by the defendant.

1. The declaration alleges the exchange of the properties, the false and fraudulent representations as to the interest, the demand of the interest from the plaintiff, her inability to pay it, and the sale in consequence thereof at a sum sufficient to pay the mortgage debt, interest and costs, that the defendant made such false and fraudulent representations well knowing them to be false and with intent to induce the plaintiff thereby to enter into said written contract and to exchange said properties, and that the plaintiff relying upon said representations of the defendant entered into the contract and did exchange the properties.    It also alleges that the plaintiff was induced to believe that no interest was due and none would be demanded on the mortgage until after the wheat harvest in 1906, and hence she made no provision for it and could not pay it. It concludes "and that by reason of the said false and fraudulent representations of the defendant, the plaintiff was deprived of the ownership and possession of said house and lot of land

and that the plaintiff suffered damage thereby.    And the plaintiff claims $4,000.''    It will thus be seen that the damages claimed in the *narr.* are not for the loss of the farm, but for the loss of the house and lot, while the fraud alleged was in reference to the farm.    If the allegations in the *narr.* are true the plaintiff was not deprived of the house and lot by the alleged fraud, but she was, at most, only deprived of the equity in the farm.    It may be that the house and lot were worth more than the latter, even if there was only due the principal of the mortgage, and it is difficult to understand upon what principle, under the allegations made in the *narr.* she could have been entitled to recover for the loss of the house and lot, regardless of the question whether that could under proper allegations be the measure of damages, which we will refer to later.   "The declaration or complaint must allege that plaintiff sustained damage by reason of the fraud, and should show that the relation of cause and effect exists between the fraud and the damage alleged."   20 *Cyc.*, 103, and cases cited in notes.   It cannot properly be said that the loss of *the house and lot* was caused by the alleged fraud in reference to the interest on the mortgage and the demurrer ought to have been sustained.

The plaintiff's first prayer, which was granted, is defective by reason of its failure to instruct the jury as to the proper measure of damages.    After reciting a number of facts which the plaintiff alleged in the *nar.* and undertook to establish by proof, it concludes "then the plaintiff is entitled to recover in this action such damages as the jury may find the plaintiff has sustained, as the direct consequence of such false representations, if in fact the plaintiff has sustained any loss, provided the plaintiff could not have prevented said loss by the exercise of ordinary care and prudence."    There is nothing in the case to have authorized the jury to find exemplary, or punitive damages.    "In ordinary cases the recovery of exemplary, punitive, or vindictive damages will not be allowed in an action of deceit ; but such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the

case presents other extraordinary or exceptional circumstances clearly indicating malice and wilfulness and calling for an extension of the doctrine." 20 *Cyc.*, 142. This case as presented does not come within any of the exceptions named. It is not alleged or attempted to be proven that the defendant made the false representations in order to mislead the plaintiff, and thereby cause a default in the entire mortgage in order that he might purchase the property at a sacrifice, or anything to that effect. If such facts had been alleged and proven, a different question might have arisen, but the mortgage was overdue for several years before the exchange of the properties, and the plaintiff did not claim that the defendant misrepresented that fact to her. So far as the record discloses there were no representations excepting as to the interest, and even if the defendant and the mortgagee had some understanding about the payment of the interest, it is not shown that it was of record or would have been binding on the assignee.

The prayer wholly failed to instruct the jury as to *the true measure* of damages. There was no limit to those the jury could assess, under the prayer, excepting of course the amount claimed in the declaration. This Court has had occasion in a number of cases to disapprove of such instructions. In *B. & O. R. R. Co.* v. *Carr*, 71 Md. 135, the judgment was reversed because the jury was instructed "that if they found for the plaintiff for the refusal to pass him through the gate, then he is entitled to such damages as they might find would, under all the circumstances, *compensate him for such refusal.*" The Court said "The rule by which damages are to be estimated is, as a general principle, a question of law to be decided by the Court; that is to say, the Court must decide, and instruct the jury, in respect to what elements, and within what limits, damages may be estimated in the particular action." In *Belt R. R. Co.* v. *Sattler*, 102 Md. 595, the same principle was announced as it was in the late case of *West. Union Tel. Co.* v. *Lehman & Bro.*, 105 Md. 442, and in other cases in this Court.

In *Webster* v. *Woolford*, 81 Md. 329, which was an action

of deceit, alleged to have been practised by the defendant in respect to his authority to sell certain property, this Court said: "The action, it is true, is in the nature of an action *for tort*, but it is a tort found on a breach of contract, and *there being no question as to exemplary damages*, the rule as to the measure of damages is the same as in cases for breach of contract in regard to the sale of property. * * * * We take the rule to be that when two parties make a contract for the sale of property which one of the parties has broken, the other party may recover such damages as may fairly and reasonably be considered, *i. e.*, according to the usual course of business, to flow from the breach itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it." The Court then quoted at some length from *Hadley* v. *Baxendale*, 9 Exch. 341. There is nothing in the evidence in this case to show that the defendant could have had in contemplation, as the result of interest being due before the harvest of 1906, that the plaintiff would be unable to pay it, and the mortgagee would assign the mortgage to some one who would demand payment of the principal and interest, and thereby cause a sacrifice of the property or loss to the plaintiff. There was at most only $93.33 more interest due than the plaintiff knew would be due, and as the record shows that the jury rendered a verdict for $1,400, it can readily be seen how injurious such an indefinite instruction as this was may be.

It is true the prayer concluded by saying "provided the plaintiff could not have prevented said loss by the exercise of ordinary care and prudence," but the established facts were that, although notice of the interest being due was given by the mortgagee on or before September 14th, 1905, and the mortgage was not assigned until November 15th, 1905, neither the plaintiff nor her husband called upon the mortgagee to endeavor to arrange the interest or procure an extension of time and what is even more remarkable, neither of them called upon the defendant to pay it or even inquired of

him whether it was due until Mr. Urie was about to foreclose the mortgage. The plaintiff's husband worked for the defendant, yet he never mentioned to him the interest or the fact that they had received notice that the insurance was due. These facts were proven by the plaintiff's own witnesses (mainly by her and her husband) and it cannot be conceived how the jury could have disregarded the qualification of the prayer above quoted unless they supposed it only referred to her care and prudence *after* the mortgage had been assigned and believed she was then unable to meet the principal and interest demanded. But in the absence of some reason for not informing the appellant that interest had been demanded of her during the two months the mortgagee held the mortgage, and demanding it of him, and in the absence of all efforts to pay the interest in that time, she should not have been permitted to recover more than the interest that the defendant ought to have paid, even if she could have otherwise done so. Under the facts presented by the record she ought to have been limited in her recovery to the $93.33—that being the interest on the mortgage from August 3rd, 1904, to the date of the transfer—as there was nothing alleged or proven to justify the recovery of any greater sum. The prayers granted for the defendant did not protect him from the injurious effects of this prayer and it should not have been granted.

There was no reversible error in rejecting the defendant's first prayer. The defendant's *fifth* in *McAleer* v. *Horsey*, 35 Md. 439, and the defendant's *sixth* in *Robertson* v. *Parks*, 76 Md. 118, went as far in stating the legal presumption as to fraud, and upon whom the burden is in overcoming that presumption, as is ordinarily safe in this class of cases. As was said in *Lynn* v. *B. & O. R. R. Co.*, 60 Md 417, "Courts ought not to give mere legal abstractions as instructions to juries, but should state the law applicable to the pleadings and facts of each case." This prayer not only embodies the substance of the one granted in *McAleer* v. *Horsey* and *Robertson* v. *Parks*, above referred to, but it concludes, "and where a transaction which is challenged admits equally

of an honest or dishonest construction, it is the duty of the jury to accept and adopt the construction in favor of honesty and fair dealings." The plaintiff's testimony tended to show that the appellant did make the statement in reference to the interest on the mortgage, while the appellant positively denied that he did. It was not a question of *construction* of what he meant by what he did say, but simply whether he did say what the plaintiff claims he said, for if he did, there being no attempted explanation of its meaning, there was no question as to whether it admitted "of an honest or dishonest construction," and hence that part of the prayer did not apply to the facts.

The theory of the defendant's fourth prayer, as we understand it, was correct, but the facts were not stated with sufficient fulness and might have misled the jury as to her right to recover even the $93.33.

It follows from what we have said that the judgment must be reversed for error in not sustaining the demurrer to the declaration and in granting the plaintiff's first prayer.

> *Judgment reversed and new trial awarded, the appellee to pay the costs.*