### THE CITY CHEVROLET COMPANY *v.* ELLA WEDEMAN

[No. 479, September Term, 1975.]

*Decided March 26, 1976.*

638

The cause was argued before POWERS, MENCHINE and DAVIDSON, JJ.

*Thomas F. McDonough*, with whom were *E. Harrison Stone* and *Royston, Mueller & McLean* on the brief, for appellant — cross-appellee.

*Jeffrey I. Goldman*, with whom were *Walker & McCadden* on the brief, for appellee — cross-appellant.*

POWERS, J., delivered the opinion of the Court.

A judgment for punitive damages in this suit against an automobile dealer for misrepresentation will be reversed, because the issue should not have been submitted to the jury. The question of compensatory damages for the same wrong was properly submitted to the jury, and the judgment based upon the verdict for compensatory damages will be affirmed.

### Punitive Damages Arising From Contracts

The tort of deceit, which was the cause of action sued

* Note: *Certiorari* granted, Court of Appeals of Maryland, June 23, 1976.

upon, arose from a contractual relationship — the purchase and sale of an automobile. The Court of Appeals reiterated, in *H & R Block, Inc. v. Testerman*, 275 Md. 36, 47, 338 A. 2d 48 (1975), that "where the tort is one arising out of a contractual relationship, actual malice is a prerequisite to the recovery of punitive damages." The Court defined the malice which must be proved when it said, at 43:

"Actual or express malice — at least in this context — has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff."

The Court, speaking through Judge Levine, reviewed its cases, which have consistently followed the rule enunciated in the landmark case of *Knickerbocker Co. v. Gardiner Co.*, 107 Md. 556, 69 A. 405 (1908). At page 44 the Court quoted from *Knickerbocker* as follows:

" ' . . . We do not mean to say there may not be [punitive] damages in cases of this character, for if, for example, there was evidence tending to show that the defendant had caused the contract to be broken for the *sole purpose, and with the deliberate intention of wrongfully injuring* the plaintiff, exemplary damages might be recovered, but when the object was merely to benefit itself, although the plaintiff would be thereby injured, there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it. . . . ' (emphasis added)."

Turning to the facts of *H & R Block, Inc. v. Testerman, supra*, in which the tort sued upon was negligent preparation of tax returns, the Court of Appeals said, at 47:

"Plainly, there was no actual malice here. As the Court of Special Appeals observed, the injury

occurred because the Block employees 'lacked the training, experience, or competence to understand the requirements of the business tax returns which they prepared.' [*Testerman v. H & R Block, Inc.*] 22 Md. App. [320] at 350. In short, as found by the trial court, they were guilty of simple negligence — the failure to exercise reasonable care. They harbored no ill will toward appellees; nor were they motivated by an evil or rancorous motive influenced by hate or spite. Neither did they act with the sole purpose or the deliberate intention of wrongfully injuring them. The worst that can be said of appellants' motives is that they were actuated by a desire to realize a commercial gain — hardly enough, as we have indicated, to constitute actual malice."

To the same effect, see *Food Fair Stores v. Hevey*, 275 Md. 50, 338 A. 2d 43 (1975).

## The Present Case

Ella Wedeman, appellee and cross-appellant here, filed a suit in the Superior Court of Baltimore City against The City Chevrolet Company for compensatory and punitive damages for fraud and misrepresentation. Her declaration alleged, in substance, that on 10 August 1970 she purchased a 1970 Chevrolet Impala Sport Coupe from City Chevrolet; that she was assured that the automobile was in perfect condition and had been used on a very limited basis as a demonstrator; that she relied upon the representations; that she later discovered that the automobile had been damaged and repaired and that the condition was known to City Chevrolet and its agent; that the representations of the condition of the automobile were falsely and fraudulently made to induce her to purchase the automobile; and that she did so, and was greatly damaged.

The case was tried before a jury, with Judge James A. Perrott presiding. Judgment was entered in favor of Mrs. Wedeman on special jury verdicts of $500 in compensatory

damages and $6,000 in punitive damages. City Chevrolet appealed from that judgment, and Mrs. Wedeman filed a cross appeal.

The evidence showed that a few days after she took delivery of the car, Mrs. Wedeman was involved in an accident in which the right rear fender of the Impala was damaged. She sought an estimate for repair of the fender from an independent body shop. The operator of the shop told her that he observed under the new damage a plastic filler not ordinarily used by the manufacturer, and for that reason he thought that the fender had previously been damaged and repaired. She did not have the fender repaired, but took the car to City Chevrolet and complained of the damage, and left the car there. From that time, the conduct of both parties can only be characterized as unreasonably obstinate. Mrs. Wedeman insisted that City Chevrolet should repair the fender, because of the misrepresentation. There was some indication that the fender had been damaged in shipment from Detroit, but had not been involved in any accident after its delivery to City Chevrolet. There was evidence that City Chevrolet offered to repair the fender if Mrs. Wedeman would agree that they had not misrepresented the car's condition to her. She refused. She testified further that even when she offered to pay for the repairs, City Chevrolet refused to do the repair work.

In any event, City Chevrolet did not repair the car. Mrs. Wedeman did not take it elsewhere, but left it there. She made no payments required by the sales agreement, which had been assigned to the Maryland National Bank. Payments due in September and October of 1970 were in default, and on 20 November 1970 the car was repossessed by the Bank. After the required notice it was sold. There was evidence that a judgment was obtained against Mrs. Wedeman by Maryland National Bank for $1,545, the deficiency on the contract after the car was sold. Mrs. Wedeman paid the judgment.

The purchase price of the automobile in the transaction here involved was $3,500. A witness familiar with the new and used car business, called by Mrs. Wedeman, testified

without objection that because the car had been damaged, even though repaired, a fair selling price for it at retail would have been $3,000 or $3,100.

City Chevrolet moved at the close of all the evidence for directed verdicts as to compensatory damages and as to punitive damages. The court denied the motion as to compensatory damages. It initially reserved as to punitive damages, but, after further consideration, concluded to permit that issue to go to the jury, and covered punitive damages in the instructions.

## Contentions On Appeal

The appellant, City Chevrolet, alleges two errors in admission of evidence at trial, error in failure to direct a verdict in its favor on the issues of both compensatory and punitive damages, and error in the trial court's jury instructions on the issue of punitive damages.

The first evidentiary error asserted is based on testimony given by Mrs. Wedeman and a Maryland National Bank employee concerning the repossession of the car and the deficiency judgment obtained by the Bank. The trial judge correctly instructed the jury not to consider that transaction in assessing damages. Even if there was error in its admission, there was no prejudice, since the jury was later restricted in its consideration of that evidence.

Secondly, the appellant claims it was error to admit testimony of James C. Rettaliata on the value of the Impala. At trial, the appellant objected to the "designation" of Mr. Rettaliata as an "expert in the field of sales and value of automobiles." The trial judge sustained that objection and accepted the witness "as qualified to testify as to what automobiles sell for within his range of knowledge." No objection was made to this subsequent question and answer:

> "Now, if you were selling that vehicle retail to the public, taking into consideration all of these factors, also what purchase price would you accept in order to sell that? A. I would accept between 3,000 and $3100."

The alleged evidentiary error is not before us. Maryland Rules 522 and 1085.

The appellant's motion for a directed verdict on the issue of compensatory damages was properly denied. When all the evidence and its inferences are taken in the light most favorable to Mrs. Wedeman, as they must be in considering such a motion, there was sufficient evidence to generate a jury issue on that question. *Buchanan v. Galliher*, 11 Md. App. 83, 87-88, 272 A. 2d 814 (1971). The testimony of Mr. Rettaliata on the value of the Impala was properly before the jury. It was not necessary for the jury to resort to surmise and speculation in order to find liability and award compensatory damages for deceit.

We have discussed the law that applies to a claim for punitive damages in a suit on a tort arising out of a contractual relationship. In the absence of evidence from which the jury could find that the tort was committed with actual malice, it is error to permit the jury to consider punitive damages. We paraphrase what the Court of Appeals said in *H & R Block, Inc. v. Testerman, supra*: City Chevrolet's agents harbored no ill will toward Mrs. Wedeman; nor were they motivated by an evil or rancorous motive influenced by hate or spite; they did not act with the sole purpose or the deliberate intention of wrongfully injuring her. The worst that can be said of their motives is that they were actuated by a desire to realize a commercial gain — hardly enough to constitute actual malice.

Accordingly, we hold that the trial judge erred in not directing a verdict in favor of City Chevrolet on the issue of punitive damages.

## The Cross Appeal

In her cross appeal, Mrs. Wedeman contends that it was error for the trial judge to limit the jury's consideration of compensatory damages to the difference between the value of the car as it was represented, and its actual value. She claims that the jury should have been permitted to compensate her for what she contends were her actual losses

and damages, that is, the value of her trade in, the cash down payment, and the deficiency balance.

The case of *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A. 2d 42 (1971), was a suit for damages for fraudulently misrepresenting an automobile to be new and undamaged when in fact it had been used and damaged. On appeal the issue was the measure of damages. The Court said, at 504:

> "A review of the Maryland cases indicates some confusion in regard to the measure of damages allowable in this State in cases of fraud and deceit. Once past the universally accepted standard that a plaintiff may 'recover such damage as the jury may find to have been sustained as the direct consequence of the alleged false representation,' the difficulty begins." (Citations omitted).

The Court analyzed at length the prior Maryland cases, and other case and text authorities, with respect to their recognition and application of one or the other of two different rules as the proper measure of damages. The two theories are referred to as the "out of pocket" rule and the "benefit of the bargain" rule. The rules are really quite simple, both to express, and to apply. They are that a defrauded plaintiff is entitled to recover either:

> a. The difference between what he paid and the value of what he got (out of pocket), or
>
> b. The difference between the value of what he agreed to buy and the value of what he got (benefit of the bargain).

*Hinkle* concludes by saying that Maryland applies the " flexibility theory", the effect of which is that a plaintiff may choose either rule provided he can support it by sufficient proof.

The difference between the two rules, although perhaps important in a particular case, is a narrow one. Unless the transaction was a "bargain" for the buyer — unless the

thing he agreed to buy had a value greater than the price he agreed to pay for it — there is no difference between them.[1]

There is no difference in the present case. Mrs. Wedeman paid $3,500 for the automobile. There was no evidence that the true value of what it was represented to be was anything other than the selling price.

The compensatory damages instructions given by Judge Perrott were as follows:

> "I further instruct you that if you find for the Plaintiff, that the Plaintiff has proven these items, that she is entitled to damages equal to the difference between the value of the automobile as it actually was and the value of the automobile as it was represented to be.
>
> "The evidence presented by the Plaintiff in this case is that she actually paid $3,500 for an automobile. Testimony of her expert witness, James Rettaliata, was that he would accept as a minimum the sum of $3,000 to $3,100 for such an automobile, if its previous damage had been repaired.
>
> "Accordingly, you may not award damages to the Plaintiff in excess of $500 being the difference between the amount paid by the Plaintiff for an automobile and the $3,000 figure established by Mr. Rettaliata, if you find for the Plaintiff.
>
> "You may, therefore, in awarding damages, should any you find, take into consideration the difference of the purchase price Ella Wedeman paid for the vehicle and its actual value."
>
> * * *
>
> "I further instruct you that in considering any

---

1. In theory there is another possibility, in which it might be said that the buyer would be "stuck" with his bargain. If he agreed to pay $1,000 for a thing which, even as represented, was worth only $800, and which, because it was misrepresented, had a true value of $500, then $200 of his loss is attributable to poor judgment, and $300 to deceit. We know of no case presenting such circumstances. We do not suggest an answer.

award of compensatory damages, if any you find, you may not consider the action of the Maryland National Bank, the fact that it repossessed the automobile or the fact that it sold the automobile belonging to the Plaintiff, Mrs. Wedeman."

The instructions correctly stated the applicable law. Mrs. Wedeman's dissatisfaction with them is that they prevented the jury from considering some of the expenses and losses which she claimed. It was proper that the jury be limited in its consideration of damages for which City Chevrolet might be found liable.

In *Empire Realty Co. v. Fleisher*, 269 Md. 278, 305 A. 2d 144 (1973), the Court of Appeals said, at 284-85:

"One suing for fraud or deceit must establish that he sustained damage *by reason of the fraud*, and that his injury was the natural and proximate consequence of his reliance on the fraudulent act, *Russell v. Stoops*, 106 Md. 138, 66 A. 698 (1907); *Weaver v. Shriver*, 79 Md. 530, 30 A. 189 (1894); *cf. Fowler v. Benton*, 245 Md. 540, 226 A. 2d 556 (1967).

"Appellees address themselves to this proposition by arguing that 'Maryland has adopted a flexible approach to the award of damages in fraud cases,' for which they cite *Downs v. Reighard*, 265 Md. 344, 289 A. 2d 299 (1972) and *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A. 2d 42 (1971). While we did approve in those cases the flexible approach to damages for fraud and deceit, that doctrine applies only to the *measure* of damages, i.e., whether one may recover the 'benefit of his bargain' or is restricted to his 'out of pocket' losses. It does not refer to *liability* for damages, with respect to which the rule mentioned earlier is controlling. It is aptly stated in 37 Am. Jur. 2d, *Fraud and Deceit*, § 293:

'In order to maintain an action for fraud and deceit, it is generally held to be necessary that the fraud be the real, direct, proximate, and immediate cause of the injury or damage. In

other words, to sustain an action for deceit, the fraud and injury must be connected and must bear to each other the relation of cause and effect.' "

We conclude, as did the Court in *Empire Realty*: "Such a relation clearly did not exist between the fraudulent act and the alleged damages in this case."

> *Judgment in favor of Ella Wedeman against The City Chevrolet Company for compensatory damages of $500.00 affirmed.*
>
> *Judgment in favor of Ella Wedeman against The City Chevrolet Company for punitive damages of $6,000.00 reversed.*
>
> *Each party to pay one half of the costs.*