## WEDEMAN v. THE CITY CHEVROLET COMPANY

[No. 42, September Term, 1976.]

*Decided November 26, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Jeffrey I. Goldman* and *J. F. McCadden,* with whom were *Walker & McCadden* on the brief, for appellant.

*Thomas F. McDonough,* with whom were *E. Harrison Stone* and *Royston, Mueller & McLean* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

We granted certiorari here to decide whether punitive damages may be recovered without proof of actual malice in an action for fraud. In *City Chevrolet v. Wedeman,* 30 Md. App. 637, 354 A. 2d 185 (1976), the Court of Special Appeals held that in this case they were not recoverable, since the fraud was a tort arising out of a contractual relationship. Accordingly, proof of actual malice was required but not met. In so holding, the court reversed a punitive damage award of $6,000 returned by a jury in the Superior Court of Baltimore City (Perrott, J.). We think the Court of Special Appeals erred.

The evidence presented by appellant established a prima facie case of fraud. The fraudulent misrepresentation occurred in August 1970 when appellant visited City Chevrolet to purchase a new automobile. She had previously dealt there and returned on this occasion because "[she] had confidence in them and they had treated [her] right in the past. They had been honest with [her]." After some discussion with a salesman, she decided to purchase a 1970 Impala Sport Coupe that was being used as a demonstrator. Before doing so, however, she made explicit inquiry concerning the condition of the automobile and was assured that it had "never been involved in an accident or damaged in any way." Given this assurance, she agreed to pay $4,247.50, funded by a cash payment, a trade-in allowance on her 1968 chevrolet, and a financing arrangement with Maryland National Bank, which purchased her conditional sales agreement from the dealer. The sale included a new-car warranty.

Approximately one week following the purchase, the automobile, while parked near appellant's residence, was

struck by another vehicle and sustained damage to the right quarter panel, that is, the right rear fender. She then took the car to a shop specializing in automobile body repairs where she was informed by the owner, a man of 35 years' experience in the trade, that the very same part of the car had been previously damaged and repaired. He described the earlier damage as consisting of an area some 12 to 14 inches in length. The prior damage was identifiable because of the plastic filler which had been used in its repair. He termed it an "after market filler," not found on the assembly line, which meant that the repairs had been made after the car left the factory. Although he was certain there had been prior repairs, he was unable to ascertain the extent of the earlier damage without completely removing the filler. Because appellant had taken delivery only several days before, the body repair expert recommended that she return to the dealer with some of the filler particles, which he gave her in an envelope. Called as an expert witness, he testified that "an average person" would have been incapable of detecting the damage, thereby corroborating appellant's testimony that she had not noticed it.

Armed with the advice and the envelope of filler particles, appellant returned to the dealer where she confronted her salesman and two other employees with the disclosure of the prior damage. Because that damage had occurred in the same general area of the car, she requested that the dealer make the repairs required by the recent accident. She was advised that the dealer would do so only if she were to retract her statement that the car had been previously damaged. Otherwise, she would be required to pay for the repairs.[1] The dealer, however, did acknowledge to her that the car had been damaged during shipment. Initially appellant balked at the condition which appellee sought to impose, but then offered to pay for the repairs. Apparently they were not made during the several weeks consumed by their discussions. Ultimately, appellant called for her car and found that it had been repossessed by Maryland

---

1. Indeed, at one point in her cross-examination, appellant testified that the dealer refused to release the car unless she made the retraction.

National whom she had refused to pay during this period. The complete repairs, if made by the dealer, would have cost $500 as opposed to the sum of $250 estimated by the body repair shop.

In the face of testimony on behalf of appellee disclaiming any knowledge of the prior repairs, the trial judge submitted to the jury, together with carefully considered instructions, the question whether appellee had committed fraud. In addition to the matter of compensatory damages, the court also, over appellee's vigorous objection, thoroughly instructed the jury on punitive damages.[2] The substance of these instructions was that malice, either actual or its legal equivalent, was essential to an award of punitive damages. The jury responded by awarding appellant compensatory damages in the sum of $500, the difference between the purchase price of the automobile and its value on the date of sale — furnished by expert testimony — and punitive damages of $6,000.

In holding that the trial judge erred by submitting the issue of punitive damages to the jury, the Court of Special Appeals relied on our recent decision in *H & R Block, Inc. v. Testerman*, 275 Md. 36, 47, 338 A. 2d 48 (1975), for its conclusion that since the tort committed here, fraud, arose out of a contractual relationship, proof of actual malice was

---

2. In relevant part, the court instructed the jury:

"I further instruct you that in order for there to be an award of punitive or exemplary damages, if any you find, there must generally be present in the circumstances some element of malice which I will define for you, fraud or evil intent or oppression entering into and forming a part of the act or acts complained of.

"Malice has been defined as intentionally doing what is injurious to another without justifiable cause.

"It does not necessarily imply spite against any individual but may imply a wanton disposition, grossly irresponsible to the rights of others.

"I further instruct you that while the word malice has been defined, its legal equivalent, wanton, is defined as extreme recklessness or utter disregard for the rights of others.

"I further instruct you that if the acts be done in a wanton or aggravated manner indicating malice or a disregard of the rights of others and the circumstances of the case afford no justification then you will be allowed to make reparation for the outraged feelings and reputation."

required to recover punitive damages. Accordingly, since no such malice had been established, punitive damages would not lie. Appellee adopts that position in this Court.[3] We think that both the Court of Special Appeals and appellee have misconceived *Testerman,* and we shall therefore reverse.

We said in *H & R Block, Inc. v. Testerman, supra,* 275 Md. at 47, a case involving negligent preparation of income tax returns, that actual malice is a prerequisite to the recovery of punitive damages where, as occurred in that case, the tort arises out of a contractual relationship. We there held that actual malice, "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff," *id.* at 43, had not been proved. *Id.* at 47. In short, the plaintiffs had merely established simple negligence. We applied the same rule in a companion case, *Food Fair Stores v. Hevey,* 275 Md. 50, 54, 338 A. 2d 43 (1975) (conversion arising from wrongful refusal to pay retirement plan benefits); *cf. Henderson v. Maryland Nat'l Bank,* 278 Md. 514, 366 A. 2d 1 (1976) (actual malice held present in conversion arising out of wrongful repossession of automobile).

In applying *Testerman* to this case, the Court of Special Appeals did not exposit its reason for concluding that the fraud perpetrated upon appellant was a tort arising out of a contractual relationship. Rather, it seems to have accepted appellee's bald assertion to that effect. In adopting the view that the fraud arose out of a contractual relationship as the premise for its holding, the Court of Special Appeals erred.

What we meant in *Testerman* by a tort arising out of a contractual relationship is exemplified not only by the factual situation there, but also in the several cases on which we primarily relied there for our holding. *See, e.g., Siegman v. Equitable Trust Co.,* 267 Md. 309, 314, 297 A. 2d 758 (1972) (conversion of checking account funds); *Daugherty v.*

---

**3.** At no stage of the trial or appellate proceedings in this case has appellee challenged the sufficiency of appellant's proof of fraud.

*Kessler,* 264 Md. 281, 284, 286 A. 2d 95 (1972) (tortious interference with contract); *St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 236-39, 278 A. 2d 12, *cert. denied,* 404 U. S. 857 (1971) (breach of contract and negligent performance of contractual obligation); *Damazo v. Wahby,* 259 Md. 627, 638-39, 270 A. 2d 814 (1970) (tortious interference with contract); *Knickerbocker Co. v. Gardiner Co.,* 107 Md. 556, 569-70, 69 A. 405 (1908) (tortious interference with contract); *cf. Rinaldi v. Tana,* 252 Md. 544, 250 A. 2d 533 (1969) (tortious interference with contract). Those cases, together with *Food Fair Stores v. Hevey* and *Henderson v. Maryland Nat'l Bank,* both *supra,* had in common one salient fact: the contractual relationship preexisted the tortious conduct. Thus, the tort found its source in the contract without which the wrong would not have been committed. It was in this context that we spoke in *Testerman* of a "tort arising out of a contractual relationship," and to which our holding there is applicable. Thus, when one may be induced by fraud to enter into a contract, the tort in that instance cannot be said to arise out of the contractual relationship. It is the tortious conduct which conversely induces the innocent party to enter into the contractual relationship.

We perceive the distinction made here as one of substance, not merely of degree. Torts arising out of contractual relationships, as we have suggested, frequently bear close resemblance to actions for pure breach of contract, *see Henderson v. Maryland Nat'l Bank, supra,* 278 Md. at 519, in which punitive damages are not recoverable, *Food Fair Stores v. Hevey, supra,* 275 Md. at 57; *St. Paul at Chase v. Mfrs. Life Insur., supra,* 262 Md. at 236. Concededly, the tort now labeled as "fraud" finds its origin in the ancient action of deceit, affording relief in earlier cases which, today, we would say sounded in contract. For almost two centuries, however, it has been recognized as purely a tort action. So regarded, it does not require the existence of a contract. W. Prosser, Law of Torts § 105 (4th ed. 1971).

Accordingly, since the fraud committed here did not arise out of a contractual relationship, but instead induced

appellant to enter into the contract, this case is not within the ambit of the *Testerman* holding. We turn, then, to a consideration of the requirement in Maryland for the recovery of punitive damages in fraud cases.

It is interesting to note at the outset that in no prior decision of this Court dealing with actionable fraud have we been met squarely with the question whether punitive damages had been properly allowed or not in the trial court. In *Russell v. Stoops,* 106 Md. 138, 143-44, 66 A. 698 (1907), however, where, in reversing a judgment for the plaintiff because the compensatory damages allowed by a jury exceeded the proper measure for that form of recovery, the Court also enunciated what has come to be regarded as the Maryland rule applicable to the recovery of punitive damages in fraud cases:

> " 'In ordinary cases the recovery of exemplary, punitive, or vindictive damages will not be allowed in an action of deceit; but such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly indicating malice and wilfulness . . . .' "

*Accord, Fowler v. Benton,* 245 Md. 540, 552-53, 226 A. 2d 556, *cert. denied,* 389 U. S. 851 (1967); *Loyola Fed. S. & L. v. Trenchcraft,* 17 Md. App. 646, 663, 303 A. 2d 432 (1973).

Never, therefore, have we intimated that actual malice, in the sense of ill will, personal animosity, hatred or spite, was necessary to recover punitive damages where fraud is established. The Maryland rule on this point accords with the weight of authority elsewhere, which generally holds that to recover punitive damages in actions of deceit, an element of aggravation, evidenced by malicious, deliberate, gross or wanton conduct, sometimes called implied malice or the legal equivalent of actual malice, or legal malice, must

accompany the fraud.[4] The conclusion therefore, which we draw from the reported decisions in other jurisdictions is that while aggravated circumstances must be shown to justify an award of punitive damages in fraud cases, proof of actual malice, as defined in Maryland, is not a prerequisite.

Nor are we disposed to adopt a rule here which requires proof of actual malice to recover punitive damages in cases of fraud. It is axiomatic that in appropriate cases such damages are awarded, over and above full compensation, to punish the wrongdoer, to teach him not to repeat his wrongful conduct and to deter others from engaging in the same conduct. W. Prosser, Law of Torts § 2 (4th ed. 1971). Punitive damages are more likely to serve their deterrent purpose in a fraud case than in most other instances of

---

4. *See, e.g.,* Gass v. Gamble-Skogmo, Inc., 357 F. 2d 215, 220 (7th Cir.), *cert. denied,* 384 U.S. 943 (1966) (applying Illinois law — misrepresentations "wantonly and designedly made"); Old Southern Life Insurance Company v. Woodall, 326 So. 2d 726, 732 (Ala. 1976) (if fraud is malicious, oppressive, or gross, and made with knowledge of falsity); Madisons Chevrolet, Inc. v. Donald, 109 Ariz. 100, 505 P. 2d 1039, 1042 (1973) (reckless indifference to the interest of others); Satterfield v. Rebsamen Ford, Inc., 253 Ark. 181, 485 S.W.2d 192, 195 (1972) (intentional performance of deliberate act with intention of misleading purchaser); Dunn v. Shaw, 303 So. 2d 6, 7 (Fla. 1974) (malicious and outrageous); Boise Dodge, Inc. v. Clark, 92 Idaho 902, 453 P. 2d 551, 555-56 (1969) (wilful or wanton conduct which was gross and outrageous); Capitol Dodge, Inc. v. Haley, 288 N.E.2d 766, 768 (Ind. App. 1972) (where acts of wrongdoer are such as to indicate heedless disregard of the consequences); Service Oil Company, Inc. v. White, 218 Kan. 87, 542 P. 2d 652, 662 (1975) (malice, fraud or wanton disregard for the rights of others); Bryan Constr. Co., Inc. v. Thad Ryan Cadillac, Inc., 300 So. 2d 444, 449 (Miss. 1974) (where fraud is grossly unjustifiable); Beshears v. S-H-S Motor Sales Corporation, 433 S.W.2d 66, 72-73 (Mo. App. 1968) (where "legal malice is present" — wrongful act intentionally done without just cause or excuse); Hardy v. Toler, 288 N. C. 303, 218 S.E.2d 342, 345 (1975) (where wrong is done wilfully or under circumstances of rudeness, oppression or in a manner which evidences reckless and wanton disregard of the plaintiff's rights); Walker v. Sheldon, 10 N.Y.2d 401, 179 N.E.2d 497, 223 N.Y.S.2d 488, 491 (1961) (fraud aimed at public generally, is gross, and involves high moral culpability); Otte v. Ron Tonkin Chevrolet Co., 264 Ore. 265, 503 P. 2d 716, 720-21 (1972) (misrepresentation made maliciously, wilfully, or wantonly, or so recklessly as to imply disregard of social obligation); D.R.W. Corporation v. Cordes, 65 Wis. 2d 303, 222 N.W.2d 671, 675-76 (1974) (under circumstances of aggravation, insult or cruelty, with vindictiveness or malice); Waters v. Trenckmann, 503 P. 2d 1187, 1190 (Wyo. 1972) (aggravation, malice or wilful and wanton misconduct); *accord,* Harris v. Wagshal, 343 A. 2d 283, 288 (D.C. 1975) (proof of fraud or deceit is sufficient because fraud necessarily encompasses "malice" — that is, wilful or outrageous conduct).

tortious conduct. One who acts out of anger or hate in committing an assault, for example, is not apt to be deterred by a fear of punitive damages. Those who are tempted, however, to engage deliberately in fraudulent conduct for profit are more likely to pause and consider the consequences if made aware that they may be compelled to pay more than the actual loss sustained by the plaintiff. *Walker v. Sheldon*, 10 N.Y.2d 401, 179 N.E.2d 497, 223 N.Y.S.2d 488, 492 (1961).

Although we hold here that actual malice is not required to recover punitive damages in cases of actionable fraud,[5] we do not retreat from what this Court said in *Russell v. Stoops, supra*, 106 Md. at 143-44, to the effect that such damages will not be awarded as a matter of course in actions for fraud. The statement there, which we quoted earlier, is virtually a paraphrase of the requirement elsewhere that the legal equivalent of actual malice be established to recover punitive damages in fraud actions. This legal equivalent, or legal malice, which is the standard we shall apply here, may be defined as conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others. *See St. Paul at Chase v. Mfrs. Life Insur., supra*, 262 Md. at 238-39.

The proof presented here met the required test. Wholly apart from the fraudulent misrepresentation itself, there was evidence of outrageous conduct on appellee's part, which could be characterized as a wanton or reckless disregard for appellant's rights. Confronted with appellant's not

---

5. As we have indicated, our holding here is limited to actions for fraud, that is, deceit, in respect to which a plaintiff is required to prove these essential elements: (1) that a representation made by the defendant was false; (2) that either its falsity was known to the defendant or the misrepresentation was made with such reckless indifference to truth as to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation, but had the right to rely upon it with full belief in its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation. James v. Goldberg, 256 Md. 520, 528-29, 261 A. 2d 753 (1970); Suburban Mgmt. v. Johnson, 236 Md. 455, 460, 204 A. 2d 326 (1964); Lambert v. Smith, 235 Md. 284, 287, 201 A. 2d 491 (1964).

unreasonable request that appellee repair at its own expense the damage sustained in the accident — located in the same place as the original damage — appellee took the position that it would make the repairs only if she withdrew her statement or paid for the damage. Appellee's stance was manifestly unreasonable since the statement was true. Nevertheless, appellant finally offered to pay for the repairs, but they were never made and the car was repossessed. This conduct, coming on the heels of the fraudulent misrepresentation itself, was sufficient to support the recovery of punitive damages.

As we have indicated, Judge Perrott instructed the jury that malice was essential to a recovery of punitive damages. He defined the term with prophetic accuracy as "not necessarily imply[ing] spite . . . but . . . a *wanton* disposition, grossly irresponsible to the rights of others. . . . [The] *legal equivalent* [of actual malice], wanton, is defined as extreme recklessness or utter *disregard for the rights of others.*" (emphasis added). This instruction was an entirely correct statement of the law applicable to this case. It should be emphasized that once a legal basis for punitive damages is established, whether or not such damages shall be awarded lies within the discretion of the trier of fact. 1 Sedgwick, Damages § 388 (9th ed. Beale 1920); 3 Frumer, Benoit & Friedman, Personal Injury: Actions, Defenses, Damages, Damages § 2.02 (1965).

In sum, since the trial court applied the proper test for the recovery of punitive damages in this case of actionable fraud, the judgment entered on the jury verdict should have been affirmed.

> *Judgment of the Court of Special Appeals reversed; remanded to that Court with instructions to affirm the judgment of the Superior Court of Baltimore City; appellee to pay costs.*