873 F.2d 1439
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
METRO MANAGEMENT, INC., Plaintiff-Appellant,
v.
William R. MORGAN, III, D.D.S., Defendant-Appellee.
 No. 88-2557.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 12, 1989.
Decided: April 14, 1989.
 
 Julian Karpoff (Karpoff, Title & Mitnick, on brief), for appellant.
 Richard Salter Phillips, Sr. (Goldsborough & Tolley, on brief), for appellee.
 Before K.K. HALL, JAMES DICKSON PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Metro Management, Inc. (Metro) appeals from an adverse judgment of the district court in its diversity action for breach of contract. Metro brought this action against William R. Morgan, D.D.S. for his refusal to pay for construction work performed pursuant to a contract between the two parties. Morgan counterclaimed, alleging breach of contract and misrepresentation in connection with the making and performance of the contract. A jury found for Morgan on both of his claims, rendering independent awards of compensatory and punitive damages on both the contract and misrepresentation claim. We conclude that, under Maryland law, punitive damages may not be awarded for pure breach of contract claims, and that allowing recovery of compensatory damages for the misrepresentation claim, which is based on the same facts as the contract claim, would be impermissibly duplicative. Accordingly, we vacate these awards, leaving only the jury's award of compensatory damages on Morgan's breach of contract claim and the award of punitive damage on the associated misrepresentation claim. We further find that the district court's assessment of attorneys' fees against Metro was improper, and accordingly vacate that portion of the judgment.
 
 
 2
 * Metro and Morgan entered into a contract for the construction of Morgan's new dental office. According to Morgan and the evidence adduced at trial, Metro's work on the office was substandard. When Morgan refused to pay Metro's bill, Metro filed this breach of contract action. Morgan then counterclaimed for breach of contract and misrepresentation. After several false starts and continuances, the trial finally commenced on February 1, 1988, even though Metro had again moved on the morning of trial for a continuance based on its principal's bad health. On February 2, however, the court declared a mistrial when the principal's health did not improve. The court then assessed the jury costs and fees associated with the two-day trial attempt against Metro for its "dilatoriness" in notifying the court of the principal's health problem. The trial began anew on May 2, 1988, and eventuated in a jury verdict in favor of Morgan on Metro's breach of contract claim and also in favor of Morgan on his counterclaims. The jury awarded Morgan $46,700 in compensatory damages and $15,000 in punitive damages on his breach of contract claim, and $8,000 in compensatory damages and $30,000 in punitive damages on his misrepresentation claim.
 
 II
 
 3
 Maryland law prohibits recovery of punitive damages for pure breach of contract claims. See Brand Iron, Inc. v. Koehring Co., 595 F.Supp. 1037, 1040 (D.Md.1984); Wedeman v. City Chevrolet Co., 366 A.2d 7, 11 (Md.1976); H & R Block, Inc. v. Testerman, 338 A.2d 48, 52-53 (Md.1975). Punitive damages are recoverable, however, when the injured party alleges and proves a "distinct, albeit intertwined, tort action ... alongside the contract breach." Brand Iron, 595 F.Supp. at 1040. Even then, however, Maryland does not allow recovery without limitation. Punitive damages are recoverable for torts that "arise out of a contract" only upon a showing of actual malice, i.e., " 'the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the [victim].' " Wedeman, 366 A.2d at 10 (quoting Testerman, 338 A.2d at 52). A tort "arises out of a contract" if " 'the tortious conduct and the contract were so intertwined that one could not be viewed in isolation from the other,' or in other words, if, '[i]n one form or another, ... the tort arose directly from performance or breach of the contract.' " Caruso v. Republic Ins. Co., 558 F.Supp. 430, 434 (D.Md.1983) (quoting General Motors Corp. v. Piskor, 381 A.2d 16, 21 (Md.1977)). If the claimed tort does not arise out of the contract, however--that is, where there is no "direct nexus between the tortious act and performance or breach of the terms and conditions of the parties' underlying contract," Piskor, 381 A.2d at 23--then it is considered a separate claim and punitive damages may be recovered on the lesser showing of the legal equivalent of actual malice, "frequently labeled implied malice." Testerman, 338 A.2d at 52. Under this lesser standard, the injured party must show, on the part of the defendant, " 'such extraordinary or outrageous conduct as to amount to the possible legal equivalent of actual intent or actual malice; also described as the wanton, reckless disregard for the rights of others.' " New Summit Assoc. v. Nistle, 533 A.2d 1350, 1357 (Md.App.1987) (quoting Medina v. Meilhammer, 489 A.2d 35, 39-40 (Md.App.1985)). This rule, which allows recovery of punitive damages in these mixed contract-tort actions on an appropriate showing of malice, grew from the Maryland courts' desire to create "a workable rule ... which would be more stringent than that applied in pure tort cases, but which at the same time would allow the possibility of recovery where the particular conduct clearly warranted the imposition of such damages." Piskor, 381 A.2d at 23.
 
 
 4
 In fashioning this rule, however, the courts clearly did not anticipate that it would be employed to garner a double recovery as it has in this case. Morgan recovered both compensatory and punitive damages on each of his claims--breach of contract and misrepresentation. He, of course, was entitled to allege both counts in his counter-complaint, see Md.R.Civ.Proc. 2-305, but recovery on both should not have been allowed as the claims seek to recover twice--once in contract and once in tort--for the same challenged conduct. See Pemrock, Inc. v. Essco Co., 249 A.2d 711, 714 (Md.1969) (noting that there can be "but one recovery for a single wrong"); UIV Corp. v. J.R. Oswald, 229 S.E.2d 512, 514 (Ga.App.1976) (disallowing double recovery on slightly different facts). Both claims seek redress for Metro's failure to fulfill the contract as anticipated by Morgan, and as represented by Metro, when the contract was formed. Recognizing that the compensatory damages award on the contract claim more accurately reflects the amount by which Morgan was damaged, we will let that award of $46,700 stand, vacating as duplicative the $8,000 award of compensatory damages on the misrepresentation claim. Also, because Maryland only allows an award of punitive damages in these mixed contract-tort claims on the basis of a proven, independent (but related) tort accompanied by malice, we vacate the $15,000 punitive damages award that is hinged to Count I, the pure contract claim, but will let stand the $30,000 punitive damages award on Count II, the misrepresentation claim, because the record supports a finding of the requisite form of malice.[1] Our reasons are as follows.
 
 
 5
 Because the misrepresentation claim is of a mixed nature--alleging misrepresentation in connection with both the formation of the contract and the performance of its terms--the analysis of the malice standard is necessarily bifurcated. The challenged conduct that concerns the performance of the contractual terms is considered to have "arisen out of the contract," necessitating a showing of actual malice. The tortious conduct that allegedly induced Morgan to enter into the contract, however, is not considered to have arisen out of the contract and only implied malice must be shown. Thomas v. Ford Motor Credit Co., 429 A.2d 277, 284 (Md.App.1981) (citing Wedeman, 366 A.2d at 11 (noting that for torts to "arise out of a contract," they must be preceded by the contract, without which the wrong could not have been committed)). The record does not support the conclusion that Metro acted with an "evil or rancorous motive to deliberately and willfully injure [Morgan]"--the actual malice standard. New Summit Assoc., 533 A.2d at 1357. With respect to the alleged misrepresentations made in connection with the completion of the project (or the contractual terms), then, the evidence only establishes that Metro proceeded with the desire to benefit monetarily at Morgan's expense. From all indications, Metro was indifferent to the identity of the other contracting party. There certainly is no evidence to suggest that Metro was motivated by a specific desire to injure Morgan. Moreover, as the Maryland courts have recognized, "[a] mere desire to realize commercial gain at the expense of another does not, without more, reach the requisite mental state for actual malice." Id. Morgan therefore was not entitled to recover punitive damages for any tortious conduct made in connection with the completion of the project pursuant to the contractual terms.
 
 
 6
 Morgan may still have properly recovered punitive damages on the misrepresentation claim, however, if the evidence of Metro's alleged misrepresentations made in connection with the formation of the contract supports a finding of the legal equivalent of actual malice--implied malice. Evidence adduced at trial shows that before Morgan signed the construction contract, Metro promised to produce a "turnkey" operation--a real showplace. According to testimony at trial, however, Metro produced a dentist office that had problems with the plumbing, electrical wiring, cabinetry, ceilings, carpeting, heating and ventilation, paint, speaker system, and the building's exterior and structural support. While all of this evidence might suggest only that Metro is better at selling than at remodeling, other evidence adduced at trial suggests the presence of a more venal explanation. For example, knowing that Morgan wanted to hire a contractor that was licensed with the Maryland Home Improvement Commission, Metro, through its principal, misrepresented that it was a member. On appeal, Metro argues that Morgan's erroneous belief that the license would have provided bond protection lessens the significance of the misrepresentation. In misrepresentation actions, however, the validity of the reason underlying the party's request is not relevant. The significant point is whether the party making the representations knowingly misrepresented a material fact with the intent that the other party would rely on it. The evidence in this case supports this view. Metro knew that Morgan considered possessing a license necessary--for whatever reason--and misrepresented that it had such a license, fully intending Morgan to rely on that misrepresentation and sign the contract. Though perhaps only barely, the evidence supports a jury finding that Metro's conduct was "of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others." Wedeman, 366 A.2d at 13. As the evidence supports a finding of implied malice, the finding of malice in turn supports the award of punitive damages. We therefore will uphold Morgan's recovery of $30,000 in punitive damages on his mixed contract-tort claim.[2]
 
 III
 
 7
 Metro also challenges the district court's imposition against it of the costs and attorney's fees associated with the false start that led to the initial mistrial in this case. After a careful review of the record, we are convinced that, while the imposition of costs for juror fees was proper under the local rules, the district court's imposition of attorney's fees was in error and must be reversed. As Metro argues, the magistrate's decision to impose the fees, which was adopted by the district court, is more reflective of frustration with the repeated delays associated with this case--only two delays being attributable to Metro--than of a careful consideration of the specific circumstances that precipitated the mistrial.
 
 
 8
 This case was twice set for trial before a different district court judge but was never reached due to calendar considerations. The third trial date was continued at Morgan's request so that he could retain new counsel after his first attorney moved for leave to withdraw. The fourth trial date was continued because it conflicted with Morgan's new attorney's calendar. The fifth trial date was continued on the morning of trial due to a death in Morgan's family. The sixth date was continued the Friday before the Monday trial because Metro's principal was in ill health. On the seventh scheduled trial date--which spurred the imposition of costs and fees--the trial commenced, even though Metro had moved on the morning of trial for another continuance based on the principal's renewed battles with his health. The magistrate denied Metro's motion in the hope that the principal's health would improve, enabling him to attend the trial later. The next morning, the second day of trial, the magistrate contacted the principal directly after learning from Metro's counsel that the principal would be unable to attend the trial even on a delayed basis. After verifying the principal's continued inability to attend, the magistrate declared a mistrial and imposed the costs and fees associated with the two-day trial against Metro due to the principal's "dilatoriness both in dealing with his problem and in notifying the court." The magistrate ordered Metro to pay $784 to the court for juror costs and $1,365.90 ($1275 for attorney's fees and $90.90 for travel expenses) to Morgan. With respect to the juror costs, the magistrate correctly explained that the local court rules allowed the assessment of such costs whenever a postponement occurred on less than one full business day's notice. Metro does not specifically challenge this authority on appeal. Moreover, we conclude that such costs were properly imposed and uphold this determination. As noted above, however, we also conclude that the imposition of attorney's fees was improper on these facts. While we sympathize with the magistrate's frustration with this action's halting progress, we are convinced by the record that the magistrate erroneously carved out an exception to the general rule that parties bear their own litigation costs, including attorney's fees. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975).
 
 IV
 
 9
 In conclusion, based on a determination that the jury's awards of compensatory and punitive damages on both of Morgan's claims constituted impermissible duplicative recovery, we vacate the award of compensatory damages on Morgan's misrepresentation claim and the award of punitive damages on his contract claim, letting stand the jury's award of $46,700 in compensatory damages on Morgan's contract claim and the award of $30,000 in punitive damages on his misrepresentation claim. Additionally, having determined that the district court improperly charged Metro with Morgan's attorney's fees associated with the aborted two-day trial, we vacate that portion of the judgment.
 
 
 10
 The case is remanded to the district court for entry of a judgment conformable to this opinion.
 
 
 11
 AFFIRMED IN PART; VACATED IN PART AND REMANDED.
 
 
 
 [1]
 On appeal, Metro challenges the sufficiency of Morgan's evidence of misrepresentation to allow the question to go to the jury and the allowance of certain evidence allegedly introduced to show a pattern of fraudulent misrepresentations. Applying the appropriate standard, we are convinced that Morgan's claim properly reached the jury as he had proven--albeit barely--each of the propositions essential to his claim by sufficient evidence to warrant a finding in his favor. Brant v. Robinson Investment Co., 435 F.2d 1345, 1347 (4th Cir.1971). The standard is met under either of the disputed Maryland authorities, see Lackey v. Bullard, 277 A.2d 593 (Md.1971); Thrifty Diversified, Inc. v. Searles, 429 A.2d 270 (Md.App.1981); therefore we do not need to determine which authority properly states Maryland's substantive law. We also conclude that the introduction of another dentist's testimony about his dealings with Metro was proper. The testimony was relevant to an issue other than character, for example, it was probative of Metro's intent when it entered into the contract with Morgan; its probative force outweighed its prejudicial effect; and it was reliable. Morgan v. Foretich, 846 F.2d 941 (4th Cir.1988); United States v. Rawle, 845 F.2d 1244 (4th Cir.1988)
 
 
 [2]
 Although collapsing the damage awards in this manner creates some doctrinal problems--as the actual malice standard applies to the allowance of punitive damages in these contract-tort claims and we are allowing recovery on the lesser standard of implied malice--we think the result is warranted by the peculiar nature of the claims presented. The aspect of the misrepresentation claim that concerns Metro's conduct before the contract was signed technically constitutes a separate tort for which punitive damages are allowed if implied malice is shown. It is therefore arguable that compensatory damages should also be allowed for this aspect of the claim as it is not considered to have "arisen out of the contract" and therefore is not formally tied to recovery on the contract claim. We are convinced, however, that the facts underlying the contract and misrepresentation claims cannot be separated sufficiently to support independent awards of compensatory damages. As we discuss above, the awards would be impermissibly duplicative. But as the separate tort with its proof of implied malice would support an award of punitive damages, we are allowing that award to stand